THE PEOPLE, *ex. rel.* GILES B. KELLOGG, administrator of William A. Batchellor deceased, *vs.* CORNELIUS SCHUYLER, sheriff, &c. GEORGE R. DAVIS and others.

Where a sheriff, having in his hands a process against the property of the defendant therein, seizes by virtue thereof the goods of another person, he is guilty of *official* misconduct, and he and his sureties thereby become liable upon his official bond.

Accordingly, where an attachment against the property of an absconding or concealed debtor was duly issued to a sheriff, who, acting under such process, seized the goods of another person, and detained the same on being indemnified, after a jury called to try the claim interposed by the owner had decided in his favor, and the owner thereupon sued the sheriff in trespass for seizing the goods and re-. covered judgment against him, on which execution was issued and returned nulla bona; *held* that the facts constituted a breach of the official bond of the sheriff, given for *the faithful performance of the duties of his office*, and that an action on the bond would lie against him and his sureties in behalf of such owner.

The case of *Ex parte Reed*, (4 Hill, 573,) commented upon, and, it seems, overruled.

If a trespass is committed by a deputy sheriff in enforcing legal process, his act, it seems, is deemed official so as to charge the sheriff for his misconduct.

Where a sheriff, under legal process, seizes property claimed by a stranger, and

(173)

[174] requires and receives indemnity before proceeding to the final execution of the writ, his sureties, on payment of the judgment recovered against him for the erroneous seizure, are entitled to be subrogated to the indemnity

THIS was an action of debt brought in the supreme court, upon the official bond executed by Schuyler as sheriff of the county of Rensselaer, and by the other defendants as his sureties, to the people of the state of New-York. The declaration set forth the bond in the penalty of $10,000, and conditioned that the said Schuyler should " well and faithfully in all things perform and execute the office of sheriff of said county of Rensselaer, during his continuance in said office by virtue of his election thereto, without fraud, deceit or oppression." It was alledged for a breach, that on the 11th of June, 1840, an attachment was duly issued at the suit of one Thomas McVity against the property of one Dexter M. Fay, as an absconding or concealed debtor, according to the statute, and was delivered to Schuyler as such sheriff, to be executed ; that Schuyler, by virtue of that process, claimed to seize and did seize the property of William A. Batchellor ; that upon said property being claimed by Batchellor, the said sheriff, in pursuance of the statute, summoned a jury to try the claim, and that the jury found the property to belong to the claimant ; that thereupon the attaching creditor, by bond with sureties, indemnified the sheriff for the detention of the goods so seized, whereby the sheriff was required te detain and did detain such goods ; that thereupon Batchellor sued the sheriff in trespass for seizing the goods, and recovered judgment against him for the sum of $2290,05, damages and costs, on which execution was issued and returned nulla bona. Batchellor having died, Giles B. Kellogg, the relator, as his administrator, obtained an order of the supreme court for leave to prosecute the sheriff and his sureties on the said official bond.

The defendants appeared by different attorneys and severally demurred to the declaration, assigning for cause, that the facts stated in the declaration did not show that the said Schuyler, at any time or in any manner, had failed or omitted faithfully in all things to perform and execute the *office* of sheriff, without fraud, deceit or oppression. The supreme court sitting in the

The People *v.* Schuyler.

third district held the demurrers well taken, and gave judg- [175] ment for the defendants. The plaintiffs appealed to this court.

*J. Pierson,* for appellants. I. The breach of the sheriff's bond is set forth in the recitals and averments in the declaration, and is well assigned. It was necessary to detail all the facts and proceedings to show the nature of the wrong, and that the sheriff committed it in the discharge of his official duty as a public officer. (*Peoplo* v. *Brush,* 6 *Wend.* 454; *Hughes* v. *Smith,* 5 *John.* 173 ; *Smith* v. *Jansen,* 8 *id.* 114; 2 *R. S. p.* 4, §§ 10, 11; *id.* 9, § 42 ; *id.* 476, §§ 1, 3.)

II. The sheriff in this case committed a trespass *by virtue of his office,* a wrong, an act of oppression, for which he and his official sureties are liable. (2 *R. S.* 4, §§ 10, 11 ; *Ex parte Reed,* 4 *Hill,* 572 ; *Batchellor* v. *Schuyler,* 3 *id.* 388 ; *People* v. *Brush,* 6 *Wend.* 454–6 ; *People* v. *Ring,* 15 *id.* 623 ; *Carmack* v. *Commonwealth,* 5 *Binney,* 184 ; *Satterwhite* v. *Carson,* 3 *Iredell,* 549 ; *Archer* v. *Noble,* 3 *Greenl.* 418 ; *Harris* v. *Hansan,* 2 *Fair.* 241 ; *Bosley* v. *Smith,* 3 *Humphrey,* 406 ; 4 *Bac. Ab.* 452, *tit. Sheriff ; Curtis* v. *Patterson,* 8 *Cowen,* 65 ; *Phillips* v. *Harris,* 3 *J. J. Marshall,* 122 ; *Commonwealth* v. *Herndon,* 2 *Dana,* 429; *Potts* v. *Commonwealth,* 4 *J. J. Marshall,* 202 ; *Watson on Sheriffs,* 198– 203, 204; 7 *Law Library,* 142–147 ; 2 *R. S. p.* 433, § 40 ; *id. p.* 476, §§ 1, 3, 5 ; 1 *R. L.* 1813, 419, §§ 2, 6 ; 1 *R. S.* 378, § 67 ; *Ex parte Chester,* 5 *Hill,* 555 : *Shepherd* v. *Hoit,* 7 *id.* 198.)

III. The sheriff was indemnified for committing this trespass, and the sheriff's bail, who can avail, or have availed themselves of his indemnity, ought to make reparation. (*Davis* v. *Tibbats,* 7 *J. J. Marshall,* 264 ; *Jessop* v. *Brown,* 2 *Gill & John.* 404; *Watson on Sheriffs,* 205 ; 7 *Law Lib.* 148.)

IV. Schuyler was sued as sheriff and defended as such, and judgment recovered against him, and the judgment of the court settles his liability as sheriff. If he had succeeded in his defence, he would have been entitled to double costs, which shows that he committed the act by virtue of his office. He could not under the general issue have justified had he not seized the property by virtue of his office. (1 *Saund. Pl. and Ev.* [176]

The People *v.* Schuyler.

479, 480 ; 2 *id.* 522, 791 ; *Davis* v. *Cooper,* 6 *Missouri R.* 148 ; *Brewster* v. *Vail,* 1 *Spencer,* 56 ; *Armstrong* v. *Garrow,* 6 *Cowen,* 465 ; *Stillman* v. *Squire,* 1 *Denio,* 327 ; 2 *R. S.* 617, § 24 ; *id. p.* 353, §§ 14, 15.)

*S. Stevens,* for respondents.   I. No breach of the condition of the bond is alledged or shown.   The facts stated in the declaration, as a breach of the condition, do not show that Schuyler in any manner or at any time failed or omitted in any respect, faithfully, in all things, to perform and execute the office of sheriff, without fraud, deceit or oppression.   The official bond of the sheriff can only be sued, where he has been guilty of some *default or misconduct in his office.*   (2 *R. S.* 390, § 1, 2*d ed.*) *A default of a sheriff in his office,* is a neglect or omission *to do* some act, which the due execution of the office *authorized and required* him to do.   *Misconduct in his office, is the doing* of some act, which the due execution of the office *authorized and required* to be done, but in an improper manner.   The act for which Batchellor recovered in trespass against Schuyler, was not an official act.   It was not an act authorized or required by the due execution of the office of sheriff.   The process, delivered to him for execution, did not direct or authorize him to seize the goods of any person but Fay.   It was, therefore, a mere personal trespass, as much so as if he had acted without process. The suit in favor of Batchellor against Schuyler was for a personal trespass.

A trespass of this description, committed by the person who holds the office of sheriff, is not a breach of the condition of his official bond ; and his sureties are not liable for any acts or omissions of his, which are not within the very terms of their undertaking.   (1 *R. L.* 1813, *p.* 419, § 2, *p.* 421, § 6 ; *The People* v. *Spraker et al.* 18 *John. Rep.* 390, 395–6.)   And the recovery against Schuyler, as appears by the record, was not against him in his official capacity, nor was it for any default or misconduct *in his office ;* and yet it is sought by this action to make his sureties liable for the amount of that judgment.   In [177] *Ex parte Reed,* (4 *Hill,* 572,) it was held that the condition

The People *v.* Schuyler.

of a sheriff's bond does not extend beyond nonfeasance or misfeasance, in respect to acts *which he is required to perform officially;* that it only extended to acts done virtute officii, and not to those committed colore officii; and that the sureties of the sheriff were not liable for a recovery in trespass against him, for seizing the goods of the plaintiff upon an execution against another person. In the case of *The Governor* v. *Hancock et al.* (2 *Alab. Rep.* 728, *new series,*) it was held that the nonfeasance or malfeasance of a sheriff, unless it necessarily included an omission to perform some duty imposed by law, was not a breach of his official bond, which was conditioned that he should "*faithfully discharge* all the duties which are, or may be required of him by law," and that consequently his sureties were not liable for his fraudulently inducing the plaintiff in an attachment to sell him a large debt, for which the attachment was issued, for a small sum, when he had in fact seized property sufficient to pay the whole demand.

II. The fact that the sheriff is required by statute to retain the property attached, if indemnified, notwithstanding it may have been found by the jury to be the property of the claimant, does not distinguish this case from those decided in the cases referred to. (1 *R. S.* 767, §11, 2*d ed.*) At common law, when a third person claimed property seized on a fi. fa. the sheriff was bound to obtain the inquisition of a jury *de proprietate probandi,* to protect him in relinquishing the property and returning the fi. fa. nulla bona; and if the jury found the property in the claimant, the sheriff was notwithstanding bound to sell it, if the plaintiff in the execution offered him an adequate indemnity. (*Bayley* v. *Bates,* 8 *John. Rep.* 185 ; *Williams* v. *Lowndes,* 1 *Hall,* 595–6 ; *Curtis* v. *Patterson,* 8 *Cowen,* 67.) Therefore the duty, and consequently the breach of duty of the sheriff upon a fi. fa. is, at common law, precisely the same as that declared by statute in the case of attachments against absconding debtors. The sheriff would not have faithfully executed the office of sheriff, if he had not detained the property seized, upon being indemnified. The refusal or omission [178] to detain the property, upon a sufficient indemnity given or ten-

dered, would have been a breach of the condition of his official bond. It would have been a default in the discharge of the duties of his office. Can his not being guilty of that default, be alledged as a. breach of his official bond?

The person whose property is thus seized, is not without remedy, independent of the personal responsibility of the sheriff. (1.) He is entitled to the benefit of the indemnity given to the sheriff. (2.) The trustees appointed under the proceedings against absent or absconding debtors, are bound to retain a sufficient sum from the moneys in their hands, to satisfy any such indemnity that may have been given by the attaching creditor. The claimant is entitled to the benefit of that security. (1 *R. S.* 802, §§ 30, 31.) But if the person whose property is thus seized, had no security beyond the personal responsibility of the sheriff, that would not authorize the court to extend the liability of the sureties to the sheriff's official bond, beyond the very terms of its condition. If the official bonds of sheriffs are not sufficiently extensive, the legislature and not the courts, must supply the defect.

GARDINER, J. The only question presented by the pleadings is, whether the sheriff and his sureties are liable upon his official bond, for a trespass committed by the former in taking the goods of the relator, in an attempt to execute regular and valid process, issued against the property of another.

The bond was in form to the people of the state; it was in effect a security, not only to suitors, who might have a direct interest in the action of the sheriff, but to every citizen who might be injured by his official misconduct. Before and at the time of the alledged trespass, Schuyler was sheriff of the county of Rensselaer. As a public officer, the attachment in question was necessarily and lawfully delivered to and received by him. He assumes to levy and draw up his inventory as sheriff; as sheriff he rightfully summoned a jury, to determine the title to the property seized, and subsequently, in his official character, [179] received an indemnity and detained the goods, in opposition to the verdict. He received the attachment, therefore,

not colore officii, but in virtue of his office. His sureties undertook " that he should faithfully execute" the process. If he had " in all things" performed his duty, he would have seized the goods of Fay or returned the writ, instead of which he levied upon the goods of Batchellor, as the property of the defendant in the attachment. Upon principle, and upon grounds of public policy, it seems to me, that the responsibility of his sureties should be different from those they would incur, if the sheriff had entered upon the premises of the relator, and removed his goods without any process whatever. In the last case supposed, the sheriff would act in his own right, and might be resisted as any other wrongdoer. In the one before us, he was put in motion by legal authority, invoked in behalf of others, and could command the power of the county to aid him in its execution. Respect for the process of our courts, and for the official character of the sheriff, if it did not forbid forcible opposition, (which must have been unavailing,) is incompatible with the notion of making resistance indispensable as a means of protection. This must be the alternative, if those who are thus aggrieved are driven to rely exclusively upon the responsibility of the officer, who, as in this case, may be wholly insolvent.

It was, however, assumed by Judge Cowen, in *Ex parte Reed*, (4 *Hill*, 573,) that no such distinction was recognized by our law, and that in neither case would the sheriff or his sureties be liable upon his official bond. He remarks, " that the words of the obligation can not be extended beyond nonfeasance or misfeasance, *in respect to acts* which by law he is required to perform as sheriff." This may be admitted : but in the case then before the court, and in the present, the sheriff as the executive officer of his county, received a regular process issued by a court of competent jurisdiction, by which he was commanded to act as sheriff. If he had neglected to act without some legal excuse, it would have been a nonfeasance ; if he had acted wrongfully in attempting to obey the mandate, it would have been a misfeasance " in respect to acts which he was required to perform [180] as sheriff." The distinction is between a case in which a duty

The People *v.* Schuyler.

is imposed at law upon an officer as such, which he is bound by his peril faithfully to discharge, and one in which there is no such obligation. Where the duty exists, and it is neglected, or performed in an improper manner, the sureties upon principle should be liable, otherwise not.

. The learned judge, in the case referred to says : " that the words of the obligation are operative for the purpose of obliging the sheriff to act *properly*, in all those things which come within the scope of his power or duty." The answer to this suggestion is, that it is within the power of every officer receiving process, to execute it or to abstain from its execution, for reasons which he can assign, and which the law will recognize ; and with this power it is within " the scope of his duty to act properly, if he elects to act under it at all." It is true, as Judge Cowen remarks, " that a trespass is not the faithful performance of the office, or any performance at all." It is, however, equally true, that the faithful performance of the office was the duty imposed by law upon the sheriff, and guarantied by his sureties. They now insist, in bar of the action, not that the sheriff fulfilled this obligation, but that in violating it he committed a trespass. Again, the learned judge remarks, " there being no authority, there is no office, nothing official." If by this we are to understand, that there being no authority for the act complained of as a breach of official duty, there was no office and nothing official, the argument, if sound, would preclude a recovery in any case against the sureties. If an authority could be shown, their defence would be complete ; if there was none, the act would be extra official, and not within the scope of their undertaking.

In *Ex parte Chester*, (5 *Hill*, 555,) the court directed the prosecution of the official bond of a sheriff and his sureties, in consequence of a false return by the former. This was a misfeasance, for which the sheriff was liable in an action of tort. It might have been argued upon the authority of *Ex parte Reed*, " that the commission of a tort was not the faithful performance of his office as sheriff, or any performance at all." The objection was as applicable in one case as the other. It is no

The People *v.* Schuyler.

answer to say that in *Ex parte Chester*, a return of the execution was authorized and required by law, and the misconduct consisted in doing the required act in an improper manner. The fi. fa. in *Ex parte Reed*, and the attachment in this case, authorized and required the sheriff to levy upon property; in both cases the seizure of the property of third persons was doing the required service in an improper manner. In each of the above cases, the specific acts, which gave the right of action against the officer, were unauthorized. Otherwise there could have been no misfeasance. In each, however, the sheriff was directed by legal process to perform an official act of the same character, of that which was the subject of complaint. In each he assumed to discharge a duty pertaining to his office, by means which the law did not authorize or permit.

That irregularities of the kind mentioned do not wholly deprive the proceeding of an official character, is manifest from the construction which, in this country and abroad, has been given to statutes framed for the protection of public officers, in reference to pleading, notice and venue. The English statutes and our own refer to acts done " virtute officii," and yet they have uniformly been held to extend to acts of misfeasance, whether the remedy against the officer was in case or trespass. (*Straight* v. *Gee*, 2 *Stark. Rep.* 448; *Reed* v. *Thompson; Weller* v *Toke*, 9 *East* 364; *Morgan* v. *Palmer*, 2 *Barn. & Cres.* 729: *Seely* v. *Birdsall*, 15 *John.* 268; 1 *Mass. Rep.* 530.)

Again, by the common law a sheriff is liable in trespass for the acts of his deputy committed in the attempt to execute process, although without his direction or recognition. (*Grinnell* v. *Phillips*, 1 *Mass. R.* 530; *Armenthe* v. *Kempe, Douglass,* 42; 3 *Greenl.* 420; *Jentry* v. *Hunt*, 2 *McCord. Rep.* 410.) But according to the doctrine of *Ex parte Reed*, there being in the given case, " no authority, there was no office, nothing official." And yet the principal is, notwithstanding, held responsible, in consequence of the *relation* existing between him and his subordinate, a relation that is purely official and nothing [182] else. (7 *Mass. Rep.* 128.) If a trespass committed by a deputy, in enforcing legal process, is deemed so far official as to charge

his principal, no satisfactory reason can be given why the same proceeding, by the sheriff in person, should not be held of the same character in order to charge his sureties.

But we are not without direct authority on this question.    In *Skinner* v. *Phillips*, (4 *Mass. Rep.* 69,) the suit was scire facias against a sheriff and his sureties, reciting the official bond of the former, the condition of which was, " that he should faithfully execute the duties of his office."   The declaration set forth a judgment against the sheriff in favor of the plaintiff, for damages by and through the *misfeasance* and *malfeasance* of the sheriff.   On demurrer to the declaration it was determined by the court, C. J. Parsons delivering the opinion, " that any party injured by the malfeasance of the sheriff or his deputy, was entitled to relief upon the bond."

In *Archer* v. *Noble*, (3 *Greenl.* 418,) a constable had given a bond with sureties " for the faithful performance of his duties and trust, as to all processes by him served or executed."   It was held, that if he seized the goods of A. under an execution against B. it was not merely a private trespass but a breach of his bond.   In *Harris* v. *Hanson*, (11 *Maine*, 241,) it was decided, that the taking of the property of one, by a coroner, upon a suit against another, was a malfeasance in office, constituting a breach of his bond given " for the faithful performance of the duties of his office."   In *Cormack* v. *Commonwealth*, (5 *Binney*, 184,) the sureties of the sheriff were held liable on a similar bond, where the goods of A. were taken upon a fi. fa. against B.    In *Forsyth* v. *Ellis*, (4 *J. J. Marshall*, 299,) the precise question was determined the same way in Kentucky ; and in *Commonwealth* v. *Stockton*, (5 *Monroe*, 192.)   In this state the decision in *Ex parte Chester* can not upon principle be reconciled with the previous one in *Ex parte Reed*.   The question must have been deemed an open one, or permission would not have been granted to the plaintiff to prosecute this suit, by the same court who refused it in *Ex parte Reed*.   The point was presented [183] in each case upon motion, and the decisions are directly opposed to each other.   We are not, therefore, concluded by the action of our own courts.   The adjudications of the highest

The People *v.* Schuyler.

courts, in at least three of the neighboring states, sustain the action. The defendants have referred to no case beyond this state, to the contrary. The weight of authority, and as it seems to me, a fair construction of the obligation of the defendants, are both in favor of the plaintiff.

There is another consideration which is deserving of attention. The action of trespass against sheriffs for the seizure of property in the execution of legal process, is sui generis. It is regarded by the law in many instances, as a means of determining the title to property, rather than in the light of an ordinary trespass. Good faith upon the part of the officer is presumed, and he may consequently require and receive indemnity before proceeding to the final execution of the writ. (8 *John R.* 185; 8 *Cowen,* 67.) The form of the indemnity in this case was prescribed by statute, and the sheriff made the sole judge of its sufficiency. (2 *R. S.* 4 §§ 10, 11.) His sureties on payment of the judgment against their principal, would be entitled to subrogation, and to the benefit of his security; while no provision is made for its assignment to those who have been deprived of their property. The omission, I grant, will not enlarge the undertaking of the sureties. But it shows, what indeed is manifest from the whole structure of the statute, that its framers supposed that in all his proceedings under it, the sheriff was in an important sense acting officially; that the idea did not occur to them, that in making an erroneous seizure under the attachment, the sheriff divested himself of all the insignia of his office, to be resumed when he took a bond and detained the property. This is the view of the defendants. We are inclined to regard the original taking as a misapplication by the sheriff of the authority of his office, for which his sureties are responsible.

The judgment of the supreme court must be reversed.

Bronson, Ch. J. and Jewett, Harris and Taylor, Justices, concurred.

Pratt, J. (dissenting.) In the examination of this [184] case it becomes necessary, in the first place, to ascertain the

precise nature of the covenant into which the sureties of the sheriff have entered, in order that we may be the better prepared to examine the question whether their covenant has been broken. The condition as presented in the statute, which is precisely the same as that set out in the pleadings, is in these words : that the sheriff " shall well and faithfully in all things, perform and execute the office of sheriff of said county, during his continuance in said office, by virtue of the said election, without fraud, deceit or oppression." (1 *R. S.* 378.) The statute also provides that " whenever a sheriff shall have become liable for the escape of any prisoner, committed to his custody, or whenever he shall have been guilty of any default or misconduct in his office, the party injured may apply to the supreme court for leave to prosecute the official bond of such sheriff." (2 *R. S.* 476.)

It is clear to me that the sureties under this bond, guarantee the public against official delinquency on the part of the sheriff, and that the guaranty extends to that alone. That in no case except for an escape can they be made liable, unless it be proved that the sheriff has violated some duty resting upon him as a public officer ; and in all cases except when the action has been brought for an escape, it is a perfect defence on their part if it appear that the sheriff exercised due diligence : that he was guilty of no want of fidelity to his trust. The case of an escape is an exception. It is made so by the statute, and therefore no degree of diligence will excuse them. But even in that case, the form of the action assumes that the sheriff has been negligent, and proof of the escape is made conclusive evidence of the fact. The bail for the limits which the sheriff is required to take is his protection, and he must look to that for his indemnity ; but except this there is no case where any thing more is required of him than due care and fidelity. This is evident from the terms of the condition of the bond, and the provisions of the statute, which give a right of action for its violation. The sheriff " must well and faithfully perform and execute the office," and for any " default or misconduct in his office," the [185] condition is violated. Now the language of the statute

The People *v.* Schuyler.

appears to me to be plain and easy of construction, and no notions of public policy can justify a departure from the plain and obvious meaning of the condition of the bond.

It is an elementary principle, that the undertaking on the part of sureties, is not to be extended by construction, one iota beyond its terms, but on the contrary, it is to be strictly construed in their favor. (18 *John.* 389; 10 *id.* 180.) The question therefore, in this case, is not whether the sheriff has not done some act *colore officii* for which he may be liable to an action, but the question for our consideration is whether the declaration shows any misconduct in his office ; any want of fidelity to the trust reposed in him as sheriff; or any failure in his official duty as such, by which the plaintiff has suffered damage.

Now what duty has he violated ? or what negligence or misconduct has he been guilty of? An attachment had been delivered to him, under which he proceeded to levy on some property, supposed by him to belong to the defendant in the execution. The relator interposed a claim of title ; the sheriff summoned a jury to try the validity of such claim, and they found the property in the relator. A sufficient indemnity was then tendered to him by the plaintiff in the attachment, and the sheriff thereupon detained the property. In all this the sheriff followed the express directions of the statute. Had he deviated from these directions, he would clearly have departed from his duty, and made himself and sureties liable to an action. (2 *R. S.* 4, §§ 10, 11 ; 8 *John.* 185; 1 *Hall,* 595; 8 *Cowen,* 67.) How then, it may well be asked, can a breach of duty be predicated upon an act by the sheriff, which the statute requires him to perform, and which, if he should neglect to perform, would itself constitute a breach of duty ? Are the sheriff and his sureties placed by the law in any such embarrassing dilemma ? Does the law tolerate any such legal absurdity, as that an act is at the same time both a performance and a violation of official duty ; a performance and a breach of the conditions of a bond ? And yet, if this declaration can be sustained upon this [186] point, it must be upon this hypothesis, however absurd it may be.

The question may be asked, how then was the sheriff made

liable at all? How could an action of trespass be sustained against him for taking property which a due discharge of his official duty required him to take? The answer is, he was made liable not upon the assumption that he has violated his duty as sheriff, but by utterly repudiating his official character, and bringing an action against him as a naked trespasser. Had an action been brought against the sheriff for official misconduct, or neglect of official duty, he could have defended successfully by showing the facts set out in this declaration. But the claimant made no complaint of that character, but reposing upon the strength of his title, makes that the issue, and thus the official character of the sheriff in the commission of the act becomes entirely immaterial. Hence the question which was discussed at some length upon the argument, whether the sheriff, in taking the property, acted officially or not, becomes immaterial. The question is not in what character the sheriff intended to act, but in what character is he made liable. If he is not made liable for some misconduct in his office, for some want of fidelity to his trust, it is not within the undertaking of his sureties. Thus I can not perceive any difference between a case of this kind, and one where the officer should take property without any process. So far as his liability is concerned, the process neither aids nor injures him. The question tried does not depend upon his good or ill conduct, whether the circumstances raised a strong presumption that the property belonged to the defendant in the execution or not.

Suppose a case where the property was found in possession of the debtor, and no notice given to the sheriff that any one other than the debtor had any claim to it. Under such circumstances, it would clearly be the duty of the sheriff to seize it, and yet, that would afford no justification to him in an action of trespass, if it should turn out that the property in fact belonged to a third person. His conduct might be the most discreet imaginable; he might after the most careful inquiry, and upon [187] the most ample evidence, be entirely satisfied that the property belonged to the defendant in the execution; and yet, in an action of trespass upon the question of title, it would be

The People *v.* Schuyler.

of no avail. And his only protection against a suit where the question of title is in issue is his bond of indemnity. His good or ill conduct as an officer is not in issue, and therefore not material. But if the action should be brought against the sheriff for misconduct in his office, all these considerations would become important and material. An issue of an entirely different character would be presented for trial ; one that would involve the official conduct of the officer : his care, diligence and general fidelity to his trust in the particular case, and one which he could defend successfully by showing that he had not been wanting in any of these respects. Now, as I have already said, the question is : in what character is the sheriff made liable, and not in what character did he design to act in taking the property ? The authorities recognize a principle or rule by which the acts of the sheriff, for which his sureties may be held liable, can be distinguished from those acts for which they will not be held liable. The former are termed acts done *virtute officii*, and the latter *colore officii*. The distinction is this : Acts done *virtute officii* are where they are within the authority of the officer, but in doing it he exercises that authority improperly, or abuses the confidence which the law reposes in him ; whilst acts done *colore officii*, are where they are of such a nature, that his office gives him no authority to do them. (*Seely* v. *Birdsall*, 15 *John.* 267 ; *Alcock* v. *Andrews*, 2 *Esp.* 540. *n.*) This distinction is as old as the common law, and has been acted upon and recognized in numerous cases, some of which I shall hereafter advert to. It is true, that in some cases statutes made for the protection of public officers, have been extended by construction to cases avowedly not within the terms of such statutes ; but they can scarcely afford any authority for departing from a strict construction of the undertaking of sureties, for the purpose of extending their liability. It is not necessary in this case, to insist that the distinction adverted to is universally applicable to the liability of sureties, upon undertakings [188] similar to the one in this case ; yet, as there must be some limit to their liability, some line of demarcation, designating those acts of the sheriff to which their liability extends, and beyond

which it does not extend, it will be found that this distinction is based upon correct legal principles, and is supported by an abundance of authority. In the one case, the inquiry relates entirely to the official conduct of the officer, whether he has neglected any duty which the law imposed upon him, or whether in doing any act which the law requires him to do, he has acted faithfully and honestly; whilst in the other case, his care, or diligence, or faithfulness, is not a subject of inquiry at all; the inquiry being limited exclusively to his power or authority to do the act.

But it has been attempted in this case to bring the act within that class to which I have conceded the liability of sureties to extend. It is insisted that the duty rested upon the sheriff in this case to seize the property of the defendant in the execution or to return the writ. But the difficulty in this argument is that the sheriff was not made liable for not seizing the goods of Fay, but for seizing the goods of the relator. The relator has no right of action against the sheriff or any body else for this neglect. The plaintiff in the attachment is the only man who has any interest in that matter. The most subtle ingenuity will scarcely be able to explain how a trespass upon the property of the relator can constitute a neglect to seize the goods of the defendant in the attachment, so as to give the former a right of action for such neglect. But it is insisted that public policy requires that the sureties should be made liable; that the rights of third persons would be otherwise unsafe, because they could not successfully resist the sheriff, he having the power of the county at his command. Arguments from mere inconvenience are never very satisfactory or controlling, and ought never to be allowed for the purpose of extending the liability of sureties. But I can not appreciate the supposed difficulty. It is quite clear that if the sheriff should attempt to seize the property of the wrong man, the latter would have a right to resist force with [189] force, and having the right with him there can be no reason why he should not be successful. (8 *Pick.* 133.) The claimant would thereby have the advantage, as he could protect those who might assist him, whereas those who might assist the sheriff would be trespassers.

Again; it is insisted that the same rule should be applied to the sureties when the sheriff commits a trespass as is applied to the sheriff when the trespass is committed by one of his deputies. No one will deny the general doctrine that a sheriff is liable for the acts of his deputies done colore officii. He and his deputies are considered in law as one person. But at the same time, this liability is rather arbitrary than necessarily growing out of the legal relation that exists between them as principal and agent, or master and servant. It is entirely inconsistent with the general principles, as applied by the courts in this country, to the relation which exists between the superior officers of the government and those inferior officers or deputies which the law requires them to appoint. As a general rule, the doctrine of respondeat superior does not apply to them.

The liability of the sheriff for the acts of the deputy is therefore clearly an exception to the general rule. This exception may have originated from the fact that anciently they were not considered public officers, but the servants or bailiffs of the sheriff, and it was customary for the sheriff to issue a precept to them in each particular case; or it may have originated in some reasons of public policy growing out of the general character of the deputies, as suggested by Sergeant Davy in *Sanderson* v. *Sheriffs of London and Middlesex*, to wit: that they were the most abandoned and wicked set of men. At all events, the exception is not based upon any legal principle which necessarily requires its extension to other cases, and especially when the effect of such extension would be to increase the liability of sureties. Their liability rests in contract, and the obligation thereby created is not to be extended beyond its legitimate scope and meaning. We are not at liberty to speculate upon reasons of policy when the rights of parties are fixed by contract.

But as a question of policy, the inquiry may well be made, why should the sureties of the sheriff be made liable in [190] cases of this kind? Through efforts to defraud creditors and sometimes when no such intention exists, difficult and perplexing questions of title or priority of lien often spring up. The

sheriff is generally a mere medium through whom the judgment creditor upon the one side and the claimant on the other litigate these questions. There is no motive for either the sheriff or the party to interfere with the claims of others, except when they honestly desire to litigate the question of title or priority of claim. On what principle then, is a party in the position of the relator in this case entitled to any greater security than other litigants? Why should the creditor not be allowed to litigate with such claimant without involving the interests or liability of the sheriff and sureties? In cases of this kind, the property is almost uniformly taken by the direction of the plaintiff in the execution. The claimant thus has the responsibility of such plaintiff in addition to that of the sheriff. As a general rule he is better protected in securing the fruits of the litigation than ordinary litigants. I must confess, therefore, that I am unable to perceive, had we power to extend the liability of the sureties, why upon principles of public policy it should be done. Whilst, according to the terms of their covenant, the sureties should be held to guaranty to the public the official fidelity of the sheriff, there is no good reason why they should be held liable for the consequences of a litigation which in no sense involves his official conduct.

I have thus far examined the question involved in this case upon principle. Upon authority the positions which I have assumed are supported by a decided preponderance, especially in this state. Indeed, in this state I have not been able to find even a dictum to the contrary. The cases of *Ex parte Reed*, (4 *Hill*, 572,) and *Ex parte Martin* referred to in that case, are directly in point. The precise question was passed upon in both cases; and although they were decided upon motion at special term, yet the former at least was decided by Judge Cowen, after consultation with the other judges of the court. The case of the *People* v. *Spraker and others*, (18 *John.* 390,) is also in [191] point that the undertaking of the sureties is not to be extended beyond its terms. That decision was under the statute of 1813, which required judgment to be recovered against the sheriff for *default or misconduct in his office* before the sureties

The People *v.* Schuyler.

could be prosecuted. The sheriff had been guilty of a neglect to return an execution for which he had been attached, and discharged by giving bail to appear upon the return day of the attachment. Failing to appear, the bond had been prosecuted and judgment recovered upon it. The court held that such recovery was not sufficient. That it must be directly for such default or misconduct in office. Yet, he was attached as sheriff and was bound to appear and answer as sheriff; which failing to do, judgment had been recovered against him. But the court held that the undertaking of the sureties must be strictly construed, and should not be extended beyond what was clearly expressed in its terms.

In *Morris* v. *Van Voast*, (19 *Wend.* 283,) the court give a construction to the language of a statute similar in its terms to that of the sheriff's bond. The action was trespass against a sheriff. The defendant pleaded that he took the property by virtue of a writ of replevin, setting up the short statute of limitations. The court, by Nelson, Ch. J. held that the statute only extended to acts done *virtute officii;* that if the sheriff was a trespasser the act must be deemed done *colore officii*, and that the statute was therefore no bar. *Seely* v. *Birdsall*, (15 *John.* 267,) was an action for a false return, which was held to be local because it was an act done *virtute officii.* Spencer, Ch. J. said, " the true distinction was between an act done *colore officii* and *virtute officii.* In the former case, the sheriff is not protected by the statute when the act is of such a nature that his office gives him no authority to do the act. But when in doing the act within the limits of his authority, he exercises that authority improperly, or abuses the confidence which the law reposes in him, to such cases the statute extends." It will be perceived that this was for precisely the same act on the part of the sheriff as that in *Ex parte Chester*, which is cited as opposed to the case of *Ex parte Reed.* As to that case it might, perhaps, be a sufficient answer to it, that it was decided by the same court who decided the case of *Ex parte Reed*, and that they did [192] not seem to be aware that they were overruling a well considered decision so recently made by themselves. But the two cases are

not analogous. There is clearly a duty resting upon the sheriff, not only to return the writ but to return it truly. If he should fail to do so, it would most clearly be a violation of official duty. And again, the form of the action is for official neglect. The gist of the action is not so much that the sheriff has entered a falsehood upon the writ, as that he has neglected to seize and sell property which the defendant owned, and thus to make the amount of the execution according to its command. It charges the officer, in so many words, with official neglect, against which no one will deny that his sureties have guaranteed the public. This will appear more clearly if we advert to the defences which the sheriff is entitled to make. He is not confined in his defence to proving the truth of his return, but he may show that he exercised due diligence in endeavoring to find property ; that upon a claim being made to property found in the debtor's possession, he called a jury, who found in favor of the validity of such claim ; or that after diligent search he was unable to find any property of the debtor. In fine, he could interpose any facts as a defence which would show that he had not been remiss in his duties as a faithful and efficient public officer. The whole question therefore, it will be seen, is one relating to the official conduct of the sheriff—a question as different from the one presented in this case as light is from darkness. The case therefore is clearly not in point.

In the case of *Commonwealth* v. *Kennard*, (8 *Pick.* 133,) it was held that the owner of property might resist the officer who should attempt to seize it by virtue of an execution against another. Ch. J. Parker said, " We cannot distinguish between an officer who assumes to act under a void precept and a stranger who should do the same act without precept. An officer without precept is no officer in the particular case in which he so undertakes to act." So in *Alcock* v. *Andrews*, (2 *Esp.* 540,) which was an action against a constable for an assault and battery, who set up the six months' statute of limitations under the [193] statute 24 Geo. 2, ch. 44. Lord Kenyon overruled the objection upon the distinction that the defendant acted *colore officii*, and not *virtute officii*—" that it had often been held that a con-

The People *v.* Schuyler.

stable acting *colore officii* was not protected by the statute. That when the act is of such a nature that the office gives no authority to do the act, in doing it he is not to be considered as an officer; but where a man doing an act within the limits of his official authority, exercises that authority improperly or abuses the discretion placed in him, to such cases the statute extends. The distinction is between the extent and the abuse of the authority."

Now these are plain, obvious distinctions, and clearly applicable to this case. I admit that they have not in all cases been adhered to; but when they have been disregarded, it has generally been for the protection of public officers, and not for the purpose of extending their own liability or that of their sureties. In two or three states, sureties have indeed been held liable for the acts of their principals done *colore officii;* but these cases cannot be supported upon legal principles. In *Carmack* v. *Commonwealth*, (5 *Binn.* 184,) the sureties of the sheriff were held liable for taking the goods of the plaintiff upon an execution against another person. The principal ground of the decision seems to have been that it cost persons so much to obtain the office that it generally made them insolvent, so that unless their sureties be made liable for their trespasses the public would not be sufficiently protected. In the same state it has recently been held, in an action against a sheriff and his sureties, where the sheriff had returned a levy upon property, that it constitutes no defence that the property did not belong to the defendant in the execution, but belonged to a third party. *Miller* v. *Commonwealth*, (5 *Barr*, 294.) This latter decision is also placed upon reasons of policy growing out of the danger of *collusion between officers and the defendants to defraud honest creditors.* We are not acquainted with the materials of which sheriffs are made in that state; but if both these decisions are good law, they must be bold men who would be willing to become their sureties. A sheriff who should unwittingly levy upon property which did not belong to the defen- [194] dant, would have no method, upon discovering his mistake, of either saving himself or sureties. If he should sell the pro-

perty and pay over the money to the plaintiff, his sureties would be liable, within the case of *Carmack* v. *Commonwealth*, to the owner; if he should return the property, then within the case of *Miller* v. *Commonwealth*, they would be liable to the plaintiff in the execution. The sureties are thus placed in a very embarrassing position; but it is a very natural consequence of departing from legal principles in deciding the rights of men, and endeavoring to adapt the law to some fancied notions of convenience.

In Maine, decisions to the same effect have been made, (3 *Greenl.* 418 ; 11 *Maine*, 241 ;) but they were based upon what was supposed to be decided in Massachusetts, in *Skinner* v. *Phillips*, (4 *Mass.* 73,) and also upon the supposed analogy to the liability of the sheriff for the acts of his deputy. I do not find any such principle decided in *Skinner* v. *Phillips*. The statute of Massachusetts requires judgment to be recovered against the sheriff; and in that case judgment had been so recovered against him, for misfeasance and malfeasance in his office, without specifying particulars. The court held that the sureties were liable for the misfeasance and malfeasance of the sheriff in his office. Now this is a truism that no one will doubt, but it entirely fails to show what act will constitute such misfeasance or malfeasance in office. Besides, the bonds of sheriffs, both in Maine and Massachusetts, provide that the sheriff shall *answer for the misfeasance and malfeasance of deputies*. As the undertaking is general for the acts of deputies, without confining it to their official acts, the bond might well admit of a more enlarged construction in regard to the liability of the sureties than a bond like the one in suit. For these reasons I do not deem those decisions as entitled to a great deal of weight, when they come in conflict with the decisions of our courts. (*See also* 2 *Shep.* 112 ; 7 *B. Monroe*, 250 ; 2 *Alab.* 728 ; 11 *S. & M.* 354 ; 13 *Ala.* 526 ; 10 *John*, 271 ; 2 *Wend.* 611 ; 3 *Burr*, 1767.)

The next question is whether the officer was guilty of any official delinquency in not paying up the judgment. If in [195] taking the property he was not guilty of official delin-

quency, it is difficult to perceive how he could be in not paying the judgment. After judgment recovered he was legally bound as any other man would be to pay it. But the recovery would impose no official duty upon him. As an officer he was bound just as strongly before as after judgment. And yet if he was bound to pay, the obligation accrued the moment he took the property. The direction of the statute to the sheriff to detain it, in cases where a sufficient indemnity is given, would thus be rendered utterly nugatory. The statute imposes no obligation upon the sheriff, as such, to pay; but it does impose this obligation upon the trustees. They are required, in the case of a claim to the property and a bond of indemnity executed by the creditor, to retain an amount sufficient to indemnify him against such claim until a final determination shall be had respecting such liability. (2 *R. S.* 46, §§ 30, 31.) It is quite probable that if the sheriff should refuse to prosecute the bond, or if he should as a public officer throw any obstacle in the way of the claimant, he might be made liable. But official delinquency can not be predicated upon the neglect to pay a judgment recovered against him, not for neglect of official duty, but for a naked trespass. The judgment of the supreme court should therefore be affirmed.

RUGGLES, J. and HURLBUT, J. concurred.

Judgment reversed.