STATE OF NEBRASKA V. EUGENE MOORE ET AL.

FILED SEPTEMBER 23, 1898. No. 10021.

1. **Fees Paid by Insurance Companies:** STATE OFFICERS. Section 32, chapter 43, Compiled Statutes (General Statutes 1873, ch. 33, sec. 32), relating to fees paid by insurance companies for services performed for them by the auditor, was so far modified by the constitution of 1875 as to require such fees to be paid in advance into the state treasury, and prohibited the auditor of public accounts from receiving them. (*Moore v. State*, 53 Neb. 831.)

2. **Officers:** LIABILITY OF SURETIES. For all wrongful acts or omissions of a public officer within the limits of what the law authorizes or enjoins upon him as such officer his sureties are liable.

3. ———: ———: EMBEZZLEMENT. But such sureties are not liable for moneys collected and embezzled by their principal, unless as such officer he was authorized by law to collect or receive such moneys.

4. ———: ———: ———. The law required of the insurance companies transacting or desiring to transact business in the state to first pay certain enumerated fees into the state treasury. The auditor of public accounts collected from the insurance companies these fees and embezzled them. *Held*, That his sureties were not liable therefor.

ERROR from the district court of Lancaster county. Tried below before HALL, J. *Affirmed.*

SEE opinion for references to cases.

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for the state.

*Brome & Burnett* and *Field & Brown, contra.*

RAGAN, C.

From January, 1891, to January, 1895, Eugene Moore was auditor of public accounts of the state of Nebraska; and during his term of office he collected from various insurance companies about $25,000, being fees which the law required of insurance companies doing business in the state. Moore converted the fees so collected to his

own use; and the state, in the district court of Lancaster county, brought this suit against him and the sureties on his official bond to recover such fees. The district court sustained a general demurrer of the sureties to the petition of the state and dismissed its action, to reverse which it has prosecuted here a petition in error.

1. The record presents two questions, one of which is: Did the law authorize or make it the duty of the auditor to collect these fees? The district court held that it did not, and upon that theory released the auditor's sureties. By section 32, chapter 43, Compiled Statutes, which went into effect in 1873, every insurance company doing or desiring to do business in the state was required to pay for the privilege of transacting business certain enumerated fees. This section of the statute further provided that the required fees should be paid to the auditor, and should "go to the auditor;" that is, become his property, as a perquisite of his office. In November, 1875, section 24, article 5, of the present Constitution took effect; and this provided that the auditor should not receive to his own use any fees, "and all fees that may hereafter be payable by law for services performed by an officer, provided for in this article of the constitution, shall be paid in advance into the state treasury." The state caused Moore to be indicted for embezzlement for converting to his own use the fees sued for herein. He was convicted, and prosecuted error to this court. (See *Moore v. State*, 53 Neb. 831.) And, though the court was divided on the question as to whether the judgment of conviction for embezzlement should stand, it was the unanimous opinion of the court that the constitutional provision just quoted not only prohibited the auditor from receiving the insurance fees to his own use, but prohibited him from collecting those fees; that the only officer authorized to receive such fees was the state treasurer. The majority of the court was therefore of opinion that the judgment of conviction for embezzlement was erroneous, because the auditor, in collecting the insurance fees,

was not performing a duty authorized or imposed upon
him by law. The correctness of the construction placed
by us on the constitution in that case is earnestly and
vigorously assailed by the attorney general in his argu-
ment in the brief filed in the case at bar. The conten-
tion of this officer, as I understand it, is that the provis-
ion of the constitution under consideration does not pro-
hibit the auditor from collecting these insurance fees,
but from receiving them to his own use, and, that the
only part of the statute, just quoted, which is inconsis-
tent with the said constitutional provision, and repealed
thereby, is that provision of the statute which author-
ized the treasurer to receive the insurance fees to his
own use. I do not feel that I can strengthen the argu-
ment made by my Brother IRVINE who wrote the opinion
in *Moore v. State.* After a re-examination of the question
we are all still of the opinion that the section of the
constitution quoted repealed and annulled not only so
much of said section 32 of the statute as authorized the
auditor to receive the insurance fees to his own use, but
also that provision of the statute which required the
insurance fees to be paid to the auditor. The constitu-
tional provision declares that the insurance fees shall
be paid in advance into the state treasury. This lan-
guage, as applied to the facts of the case at bar, means
that an insurance company desiring to do business in the
state should, before being authorized thereto, pay the
fees which the law demanded of it into the state treas-
ury. It is the insurance company that the constitution
commands to make the payment, not the auditor; and
this payment is to be made, not after the company has
been authorized to do business, but as a condition pre-
cedent to the authority of the auditor to empower it to
do business. If the framers of the constitution had
meant that the auditor might collect insurance fees, as
he had been doing prior to the adoption of the constitu-
tion, and then within a reasonable time cover them into
the state treasury, they would undoubtedly have said

so in so many words. We do not know that it is necessary for us to find a motive which prompted the framers of the constitution to require these insurance and other fees to be paid in advance into the state treasury. But it may be that they were of opinion that such a method of transacting the business would be more likely to prevent frauds, and cause the state to receive the benefit of such fees as, under the system prescribed by the constitution, every executive state office, and the records therein, would at all times show with what insurance fees, at least, the treasurer should be charged.

2. A second question presented by the record is whether the sureties are estopped from interposing the defense that the auditor was neither authorized nor empowered by law to collect the insurance fees which he did collect and embezzle. The attorney general insists that, if Moore is estopped, his sureties are. Conceding, without deciding, this proposition, we state the position of the attorney general by a quotation from his brief: "We believe that the authorities are practically unanimous in holding that an officer who has received money under and by virtue of a statute cannot be heard to question the validity of that statute when called upon to account for the money thus received." The argument is that the auditor, having demanded of the insurance companies the payment of the fees which the law required them to pay, and having collected these fees, is estopped from saying that the adoption of the constitution of 1875 repealed said section 32 of the statute which authorized him to collect these fees. In support of his contention the attorney general cites us, among others, to the following cases: *Chandler v. State*, 1 Lea [Tenn.] 296; *Village of Olean v. King*, 116 N. Y. 355; *Swan v. State*, 48 Tex. 120; *Morris v. State*, 47 Tex. 583; *Waters v. State*, 1 Gill. [Md.] 302; *Commonwealth v. City of Philadelphia*, 27 Pa. St. 497; *Middleton v. State*, 120 Ind. 166; *Hoboken v. Harrison*, 30 N. J. L. 73; *Ferguson v. Landram*, 5 Bush [Ky.] 237; *Mississippi County v. Jackson*, 51 Mo.

23; *Vermilion Parish v. Brookshier*, 31 La. Ann. 736. A review of one of these cases will suffice. In *Village of Olcan v. King*, 116 N. Y. 355, the defendant was a tax collector and failed to pay over to the village certain taxes collected by him. When sued on his bond for these taxes he attempted to defend upon the ground that the law imposing the tax was unconstitutional, and the court very properly held that this was no defense for the tax collector. But in the New York case the tax collector was not only authorized to collect the taxes levied, but was charged by law with the duty of collecting them. It was the law imposing the tax that was unconstitutional, and, if that law was unconstitutional, that was a question between the state which imposed it and the taxpayer; and it was not for the officer whose duty it was to collect all taxes levied to question the validity of that law, to escape liability for the taxes collected by virtue of it. The other cases cited by the attorney general are like the case from New York, but they are not in point here. In the case at bar there is no question as to the validity of the law imposing a tax or fee upon insurance companies. But here the question is, who had authority to collect these fees or taxes? The auditor did collect them, but the law not only did not authorize him to do so, but the constitution forbade his touching them. In the case at bar, if the auditor had been authorized or enjoined by law to collect these fees from the insurance companies, and he had done so, and then the court had declared the law imposing the fees upon the insurance companies unconstitutional, the cases cited by the attorney general would be exactly in point. But here it is proposed to hold the sureties of the auditor liable for his failure to account for moneys received by him which the law not only did not authorize him to receive, but fees which he was by the constitution forbidden to receive. We understand that, for these sureties to be liable to the state for the fees sued for here, the auditor must have collected them by virtue of

his office, and failed to account for them.  The contract of the sureties with the state was a guaranty to the commonwealth that Moore should faithfully perform the duties of his office; that is, that he would account and pay over to his successor all moneys received by him which he was authorized by the law to receive. If Moore was not authorized by the law to collect these insurance fees, in converting them to his own use, and failing to account for them to his successor, he has not failed to perform a duty enjoined upon him by law.  To adopt the construction contended for by the state in this case would be to make the sureties on the official bond of a county clerk liable for state and county taxes paid by the citizen to him, which the law requires to be paid to the county treasurer; and if such payment should be made, and the county clerk should embezzle the taxes received, can any principle be found in the law books upon which the sureties on his bond would be estopped from saying that he was not authorized by law to collect those taxes?  For all wrongful acts or omissions of the auditor within the limits of what the law authorized or enjoined upon him, as such officer, the sureties are bound; but they are not bound to make good to the state moneys which the auditor embezzled, and which moneys he was not authorized to receive or collect.  (*People v. Hilton*, 36 Fed. Rep. 172; *San Luis Obispo County v. Farnum*, 41 Pac. Rep. [Cal.] 447; *Lowe v. City of Guthrie*, 44 Pac. Rep. [Okla.] 198; *People v. Cobb*, 51 Pac. Rep. [Col.] 523; *Orton v. City of Lincoln*, 41 N. E. Rep. [Ill.] 159; *People v. Pennock*, 60 N. Y. 421; *Governor v. Perrine*, 23 Ala. 807; *Griffith v. Commonwealth*, 10 Bush [Ky.] 281; *Scott v. State*, 46 Ind. 203; *Hawkins v. Thomas*, 29 N. E. Rep. [Ind.] 157; *Holliman v. Carroll*, 27 Tex. 23; *United States v. Adams*, 24 Fed. Rep. 348; *Ward v. Stahl*, 81 N. Y. 406; *Dedham Bank v. Chickering*, 21 Mass. 314; *City of San Jose v. Welch*, 4 Pac. Rep. [Cal.] 207; *State v. Bonner*, 72 Mo. 387; *State v. Moeller*, 48 Mo. 331; *Nolley v. Callaway County Court*, 11 Mo. 447; *Heidenheimer v. Brent*, 59 Tex. 533; *Saltenbery v. Loucks*,

8 La. Ann. 95; *United States v. Rogers*, 81 Fed. Rep. 941; *Huffman v. Koppelkom*, 8 Neb. 348; *Ottenstein v. Alpaugh*, 9 Neb. 237; *State v. Holcomb*, 46 Neb. 629.)

The judgment of the district court is

AFFIRMED.