CITY OF SCOTTSBLUFF, APPELLEE, V. SOUTHERN SURETY COMPANY, APPELLANT.

FILED JANUARY 12, 1933. No. 28314.

*Morrow & Morrow,* for appellant.

*Clarke & Patterson, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

ROSE, J.

This is an action by the city of Scottsbluff, plaintiff, against the Southern Surety Company, defendant, surety on the bond of Charles C. Cross as city clerk during the

official term of two years beginning April 14, 1925. In the penal sum of $1,000 the bond contains the condition that the city clerk "shall faithfully perform such duties as may be imposed on him by law and shall honestly account for all money that may come into his hands in his official capacity during the said term." The salary of the clerk had been previously fixed at $900 a year or $75 a month. In addition thereto the clerk drew from the city treasury as "disbursing officer" $50 a month from July 1, 1926, until April 1, 1927, a period of nine months, or a total of $450. To recover back this latter sum as unauthorized compensation drawn from the city treasury in violation of law, with interest on each monthly payment of $50 from the date thereof, the city sued the surety on the clerk's official bond.

Defendant, the surety, admitted in its answer that Cross as clerk and disbursing officer drew from the city treasury $125 a month for the nine months beginning July 1, 1926, and interposed the defenses that the mayor and council by motion, second and vote, April 21, 1925, constituted the clerk a "disbursing officer" with duties different from those imposed by law upon the clerk and allowed Cross an additional salary of $50 a month for performance of the new duties imposed; that he performed the duties of the new office and drew the authorized salary of $50 a month therefor; that he presented to the mayor and council in one voucher a monthly claim of $75 for the salary of the clerk and of $50 for the salary of the disbursing officer; that for nine months the council allowed each monthly claim and ordered a warrant on the city treasurer for payment thereof; that Cross drew each of the nine monthly warrants for $125 in favor of himself and presented one of them to the city treasurer on the first day of the month or a little later; that the creating of the new office, the fixing of the salary therefor, the performing of the duties thereof, the allowing of the claims for compensation and the ordering of the warrants therefor estopped the city from asserting that Cross did not faithfully perform his duties as clerk

or that he was not entitled to the $50 a month received by him as disbursing officer or that the city was damaged by a breach of the clerk's bond.

In a reply to the answer, plaintiff admitted that, at a meeting of the city council April 21, 1925, it was moved, seconded and carried that the city clerk be constituted a disbursing officer at a salary of $50 a month. Other allegations of the answer were denied.

From judgment on a directed verdict in favor of plaintiff for $605.88, including interest from the date of each 50-dollar payment, defendant appealed.

It is first argued that the surety is not liable for the additional compensation of Cross as disbursing officer for the reason that he did not receive it by virtue of his office of clerk but under color of office. In support of this proposition the surety cited *State v. Moore,* 56 Neb. 82, *State v. Porter,* 69 Neb. 203, and other similar cases in which a distinction was drawn between "color of office" and "virtue of office," in testing the liability of sureties on official bonds. The effect of these decisions was to release sureties from liability for conduct in which public officials without authority of law, but under color of office, illegally enriched themselves at public expense. The distinction noted complicated the law applicable to sureties. The history of litigation on this subject shows that the rule adopted in the cases cited limited or partially destroyed the protection of official bonds and resulted in public losses. The weight of authority seems to be contrary to the cases cited, but a different rule and another line of cases control the case at bar. However, since contracts by principal and surety have been executed pursuant to law as construed in the *Moore* case and in other Nebraska cases, the situation perhaps calls for legislation requiring sureties on official bonds to assume liability for wrongful acts committed under color of office, if resulting in public loss, rather than for the overruling of former holdings of the supreme court.

In the *Moore* case the report shows that the state auditor used his official position to get possession of fees

payable to the state treasurer which he was not authorized to collect or retain and which never reached the public treasury. In the case at bar public money already in the city treasury was taken therefrom for excessive and forbidden compensation by means of warrants executed by the city clerk in favor of himself, the issuance of proper warrants being a function of his office.

In *Kane v. Union Pacific Railroad*, 5 Neb. 105, the official bond of a county treasurer, who had exacted excessive fees, contained a provision that "he shall faithfully and impartially, without fear, favor, fraud, or oppression, discharge all the other duties, now or hereafter, required of his office by law." In an action on the bond the surety was held liable. The case was subsequently overruled on the question of jurisdiction, but on the point now in issue the court in the opinion said:

"The rule seems to be well settled, and is certainly sound in principle, that the exaction of illegal fees under color of office is a breach of such condition as that contained in the bond offered in evidence in this case. *People v. Schuyler*, 4 N. Y. 173; *Charles v. Haskins*, 11 Ia. 329; *Harris v. Hanson*, 11 Me. 241; *Ohio v. Jennings*, 4 Ohio St. 418; *Skinner v. Phillips*, 4 Mass. 69; *State v. Shacklett*, 37 Mo. 280."

This doctrine was approved and followed by a unanimous court in *Fox v. Meacham*, 6 Neb. 530; *Turner, Frazer & Co. v. Killian*, 12 Neb. 580; *Gordon v. Hennings*, 89 Neb. 252. It was also distinguished without criticism in *Eccles v. Walker*, 75 Neb. 722.

Under the charter of Scottsbluff, the salary of the city clerk, as shown by the evidence, was fixed by an unchallenged ordinance at $900 a year or $75 a month. Comp. St. 1929, sec. 16-306. This salary was the limit of the clerk's compensation for official services of all kinds. Comp. St. 1929, sec. 16-502. The city clerk was an elective officer who could not be appointed to any other city office created by the city council. Comp. St. 1929, sec. 16-302. It is shown by the statutes and the record that the city council was without power to constitute the city

clerk "disbursing officer" with an additional salary of $50 a month. Nevertheless, for each of nine months, the city clerk procured from the city treasury excessive compensation of $50 a month in the following manner: In a single monthly voucher he presented a claim for salary of city clerk, $75; and for salary of disbursing officer, $50; total, $125; or salary of city clerk and disbursing office, $125. On each of the vouchers he drew a single city warrant on the city treasurer for $125 and joined the mayor in executing it. It was his official duty to execute a monthly warrant in favor of himself for $75. The warrants were all presented and paid in full. The execution of the warrant for the authorized salary of $75 a month and for the inhibited compensation of $50 a month was a single act.

The action herein is not based on the condition of the bond that the city clerk "shall honestly account for all money that may come into his hands in his official capacity." It is founded on the obligation of suretyship that the city clerk "shall faithfully perform such duties as may be imposed on him by law." The law imposed on him the duty of drawing and executing monthly salary warrants in favor of himself for $75 and no more for that purpose. The city charter required him to perform all the duties of his office for the lawful compensation— $75 a month, and prohibited him from using his office to issue warrants for an additional salary. The city council was without power to constitute him disbursing officer at an additional salary. That action and everything under it were void, because inhibited by positive law. The void acts of the council created no rights and afforded no protection. Whether the excessive warrants were issued by virtue of office or under color of office, Cross breached his contract to "faithfully perform such duties as may be imposed on him by law," a specific obligation of suretyship by which defendant bound itself. The trial court conformed to these views of the law and the facts and in doing so did not err.

It is nevertheless urged by the surety as a defense that

the claims of the city clerk for additional compensation were allowed by the city council and that the allowances had the force of appealable judgments not open to collateral attack and from which there was no appeal. In this connection it is further insisted that the city clerk had no alternative except to obey the orders of the city council to issue the warrants. The argument on these issues is fallacious. For reasons already stated, the attempt of the city council to "constitute" the city clerk "disbursing officer" with an additional salary, the approval of claims therefor and the order to issue warrants accordingly were all prohibited by the city charter and were void in every particular. As void acts inhibited by statute, they were open to collateral attack. As direct violations of the city charter, they were not the acts of the city, but individual trespasses beyond official power and municipal legislation. The city was at liberty to rely on its charter, to denounce those acts as invalid, and to resort to the official bond of the city clerk for redress to the extent of the damages. Estoppel and all other defenses pleaded are without support in law or evidence. It follows that the peremptory instruction in favor of plaintiff is free from error.

The judgment is assailed as excessive on the ground that it contains interest on each payment of $50 from its date, instead of the date on which the action was brought, in absence of previous notice of a breach of the bond. In an opinion by Judge Letton the rule in Nebraska was stated as follows:

"It is alleged as error that the court allowed interest upon the penalty of the bond from the date of the breach. There is a conflict in the decisions on this point, but the question has been settled in this state in *Mullen v. Morris*, 43 Neb. 596, 611, and *Thomssen v. Hall County*, 63 Neb. 777, where it is shown that the weight of authority is in accordance with the holding of the trial court." *O'Shea v. North American Hotel Co.*, 109 Neb. 317.

The district court allowed an attorney fee of $150 as costs in favor of the city and this is challenged as er-

roneous on the ground that it was the duty of the salaried city attorney to prosecute all actions on behalf of the city without the municipal expense of other counsel. The trial court, in view of plaintiff's recovery of judgment, had statutory authority to allow a proper attorney fee as costs. Comp. St. 1929, sec. 44-346. The calling of witnesses to prove the value of legal services performed was not necessary to the taxing of an attorney fee, the trial court being familiar with the facts. The rule on appeal is the same. *Allen v. Tallon*, 120 Neb. 611. The record shows that two attorneys appeared for the city from the time the reply to the answer was filed until the bill of exceptions was prepared. In a recent opinion it was held:

"A city having a regular salaried attorney is not for that reason prevented from employing special counsel in particular instances when the city attorney is absent or ill or disqualified." *Meeske v. Baumann*, 122 Neb. 786.

The city charter provided for one salaried attorney only. It was properly assumed, in absence of evidence to the contrary, that the city authorities performed their duty in employing an additional attorney. *Meeske v. Baumann*, 122 Neb. 786. For the purpose of review in the appellate court, it was incumbent on the surety, if aggrieved by the taxation of costs, to present on appeal a record affirmatively showing error in that particular. Error is not so shown. An attorney fee of $75 will be taxed to defendant as costs in the supreme court for the services of additional counsel therein.

AFFIRMED.