Evans, J.
The same questions in each of the above eases are presented by the demurrers to the petitions, and said questions in all of said cases will be here considered and determined together.
William S. McKinnon served as treasurer of the state of Ohio for the term commencing January, 1904, and ending January, 1906. He was re-elected and served as such state treasurer for the term commencing January, 1906, and ending January, 1908. Pie gave statutory bonds as such treasurer, as provided by law, at the inception of each of his said' terms.
Isaac B. Cameron served as state treasurer of Ohio for the two terms immediately preceding the terms of office of said McKinnon, his first term being from January, 1900, to January, 1902, and his second term from January, 1902, to January, 1904. He also gave statutory bonds as such state treasurer, as provided by law, for each of his said respective terms of office,
*514 Both said officers duly qualified as such, and all of said bonds were duly executed, delivered and approved; as required by law.
Because of separate bonds, a separate action is filed on each bond, hence there are four separate actions here involved, and except for'some difference in the phraseology of the conditions of the bonds of said respective treasurers, the amounts, dates and interest paid on the deposits, the several causes of action are substantially alike.
The several actions seek to recover against said treasurers and their sureties on their official bonds for interest on moneys of the state which had lawfully come into the hands of said respective treasurers, but which moneys, it is alleged, in large amounts, were not' kept by said treasurers in the treasury, as required by law, but were by them, respectively, wrongfully, unlawfully and continuously loaned out and kept loaned out to, and deposited with, various corporations, co-partnerships, associations and other persons, in the state of Ohio, not less than the amounts stated in the petitions, and during the periods of time therein stated, and that during the respective terms of said officers, that said treasurers received from said corporations, co-partnerships, associations and other persons, as a consideration for said loans and the use of said public moneys, large sums of money and other things of value, which said treasurers wrongfully and unlawfully retained and appropriated to their own personal use. Said petitions then set forth the sums of money, which, it is alleged, is not less than the sums received and appropriated by said treasurers as interest on said public money so unlawfully loaned and deposited with said associations. In other words, each action seeks to recover a judgment in a large sum of - money against said former treasurers and the sureties on their official bonds, which money, it is averred, was interest collected from public moneys belonging to the state of Ohio, of which .they, as such officers, were lawful custodians, and which, it is averred, they unlawfully loaned and deposited with such associations, and that in consideration therefor, said interest was paid to said officers, which interest from said public money they appropriated to their own use, and, on demand, refuse to account for and pay to the state of Ohio.
*515 The sufficiency of .the petitions as to the liability of said treasurers is not raised on this hearing. The personal representatives of said former treasurer, McKinnon (the latter being now deceased), who are parties jointly sued with the sureties on the two respective officials bonds of said McKinnon, have not joined in the demurrers of the sureties, nor has Mr. Cameron interposed by demurrer, he also being sued jointly with his sureties on his official bond. The question here raised is as to the liability of the said sureties alone.
The official bonds in each case are in the sum of $600,000. The condition in the bonds of said McKinnon provided:
"That, whereas, said William S. McKinnon had been elected to the office of Treasurer of State for the State of Ohio for said term, if he, the said William S. McKinnon, should, during his said term of office, faithfully discharge the duties imposed upon him by law, to the best of his knowledge and ability, and should turn over and deliver to his successor in office, or other person entitled thereto, all money and other property coming into his custody as Treasurer of State for the State of Ohio, as required by law, then said obligation should be void, but otherwise should be and remain in-full force and effect.”
The condition attached to the bonds of said Cameron provided:
"That, whereas, said Isaac B. Cameron had been duly elected to the office of Treasurer of State for the State of Ohio for said term, if he, the said Isaac B. Cameron, should, during his said term of office, faithfully discharge the duties imposed upon him, as such treasurer, by law, to the best of his knowledge and ability, then said obligation should be void, but otherwise should be and remain in full force and effect.”
It is claimed on behalf of the demurrers that there is no liability on the part of sureties on the bond of a public officer intrusted with the collection, care and disbursement of public funds, except as to such funds as come into his hands by virtue of his office—such funds as he is required in his official capacity to take charge of, keep and disburse; that funds which a public officer receives from a source or by a means which is forbidden him are not funds which he receives by virtue of his offie.
Hence it is claimed that, as said treasurers were forbidden by law to take the public money from the vaults of the state treas *516 ury, and deposit or loan it with banks or other associations or persons, and in -consideration therefor, be paid by said banks interest on such loans or deposits, that any such money so paid as interest on such public funds so unlawfully loaned or deposited by said treasurer, and appropriated by such treasurer, is not money that comes into his hands by virtue of his office, and consequently is not money contemplated in the bonds of his sureties, or for which they, by their contract, and by law, have obligated themselves, and that there is no breach of the bond.
It is claimed on behalf of the State of Ohio, the plaintiff, that notwithstanding the loaning or depositing of the public money of the state by said treasurers, and the collecting of interest for the use of said public money by banks, associations or persons, with whom it was so loaned or deposited, was forbidden by law, that said money belonged to the state, and that the increment, or interest for the use thereof, follows the principal, and that, consequently, the appropriation by said treasurer of said interest is a breach of the bond.
I can not undertake here to review all the authorities cited by counsel. Since the oral argument I have devoted much time to reading and endeavoring to digest the cases cited, and shall refer to such of them as, in my opinion, control in reaching my conclusions.
There is apparently much conflict of opinion in the holding in different states upon the question here presented. But, from a careful consideration of the Ohio decisions, I am of the opinion that the decisions in this state are conclusive in determining the question here involved. ■
The doctrine announced in some other states, notably, as in State v. Walsen, 17 Colo., 170, Conn v. Godshaw, 92 Ky., 435, Shelton v. State, 53 Ind., 331, and other similar cases, that in the absence of a statute charging the officer with the profits resulting from the use of public money, that such officer is not liable, has not been adopted in this state. Some states, however, do hold, and a leading case so holding is State v. McFittridge et al, 84 Wis., 501, that if the deposits of public moneys were made by such officer without lawful authority, the interest thereon was illegally received by such officer, and that in such case there is no liability therefor on the official bond of such officer.
*517 That is the very question here- presented. If this doctrine applies in Ohio, the demurrers should be sustained; if not, they should be overruled. The reasons for the holding that sureties on an official bond of such officer are not liable for interest received and appropriated by such officer, from unlawfully loaning out public funds in his custody are, that in so doing said officer was not in due performance of any duty devolving upon him by law, either by virtue or by color of his office; that he has accounted for all money of the state that has lawfully come into his hands, and is not charged with misappropriating any of the state funds that lawfully came into his hands; that before such interest could lawfully come to the state so as to charge his sureties, it must appear that such officer was authorized by law to loan or deposit such funds with banks or other associations or persons and receive interest thereon.
Numerous other cases are cited on this question and both plaintiff and said defendants contend that said cases are decisive on the question as claimed, respectively, by them.
The leading case relied on by said defendants is State v. Griffith, 74 O. S., 80. The court in this case held that a clerk of a board of education is not authorized, nor is it made-his duty by statute, to receive and become the custodian of tuition funds belonging to such board, and such board is not empowered by Section 3965, Revised Statutes, to make a rule conferring such authority or imposing such duty on the clerk of the board; and where, pursuant to such rule, the clerk of the board was permitted to and did receive and have the custody of tuition funds which he failed to safely keep and account for, the sureties on his statutory bond are not liable therefor. The money sought to be recovered in said ease was tuition fund paid to said clerk.by scholars residing outside said school district. There was a resolution of the board -of education authorizing such children to attend the city schools upon payment by them, to the clerk of the board, of tuition fees. The court held that said clerk had no authority of law to collect or receive said tuition fees, and that he was not by law the custodian of such fund, and that the board of education had no authority of law by resolution to make it the duty of said clerk to collect said fees; that such duty lawfully devolved upon the treasurer-and not .upon the clerk.
*518 Consequently, it is held in said case that no part of the money so misapplied by said clerk pertained to his office. He had no lawful right to receive it, hold it in his custody, or disburse it. The law devolved that duty upon another officer—the treasurer— to collect, hold and disburse such funds. There are many authorities holding the same doctrine, some of which are cited under the third class announced in said Griffith ease {supra).
In County of San Luis v. Farnum et al, 108 Cal., 562, the action was against a county auditor and his sureties. The auditor collected and converted license tax. The law devolved, that duty on the county treasurer and not upon the auditor. Hence the entire fund converted was money he had no lawful right to receive, hold or disburse. A similar holding was had in Orlin v. City of Lincoln, 156 Ill., 501; Wilson v. State, 67 Kan., 46; State v. Moore, 56 Neb., 82, and other eases.
In Eshelby v. Board of Education, 66 O. S., 71, which was an action to recover against Eshelby, treasurer of the school district of Cincinnati, for money received and appropriated by him as interest from public school funds deposited by him in a bank in Cincinnati, the question presented was whether said interest belonged to said Eshelby or to said board of education.
The sureties on the bond of said treasurer were not parties to the action, and while the action was not on the bond, yet the defendant below pleaded the conditions of the bond in his answer, and claimed that, when he has paid out the moneys actually paid into his hands by the proper officers collected by them through the various means provided by law to be credited by law to the school fund, he has done his whole duty under his contract, and if he receives interest on moneys deposited with a bank, which deposit is made at his risk, he is entitled to such interest.
The Supreme Court in this case decided that funds coming into the hands of the treasurer are not his funds, and that the relation of debtor and creditor is not established between him and the district; that instead of being the creditor of the district he is its treasurer—.the custodian of its funds—and that he acquires custody of the funds without acquiring title to them; that, in the absence of a statute or stipulation to the contrary, the increment follows the principal; that, while he may deposit it, *519 he may not in any manner invest it; that the safety of public funds has been the chief object of care. For their security the law employs the character and ability of the treasurer, and the security which is afforded by his official bond.
There has been some contention here as to whether the deposit of said funds in the Eshelby ease, and in the case of Glenville v. Englehart et al, 19 O. C., 285, was authorized by law.
It is true the court say in said Eshelby case that the proviso in Section 6841, Revised Statutes, makes it lawful for the treasurer of a board of education to deposit the funds in his keeping. It also says that said section of the statutes makes it unlawful for the treasurer “to use, loan or invest it in any manner.”
In Village of Glenville v. Englehart et al, 19 C. C., 285, the court there expressly held that the treasurer, without the consent of the council, deposited the funds of the municipality in a bank and received interest for its use.
It is contended in argument here that the court was wrong in so finding because of the provision of Section 6841, Revised Statutes. But the court here points out that the provisions of Section 1772, Revised Statutes, must be read in connection with Section 6841, Revised Statutes, in determining the authority to so deposit public funds.
Section 1772, Revised Statutes, provides that:
“That moneys of a village shall be kept in a burglar-proof safe belonging to said village, if such there be; provided, however, that in any village the treasurer or person intrusted with the funds of the same may, with the consent of the council of such village and bondsmen of such village treasurer, deposit such funds in the bank or other safe place, subject to the order of the treasurer or person making the deposit, subject to such terms and conditions as to collateral security from such bank or person receiving such deposit, as council shall by resolution direct.”
It appears from said case of the village of Glenville (supra) that no such consent of the village council or of said bondsmen of said treasurer was obtained for depositing said funds in said bank; consequently, there was no authority of law in that case for said treasurer to deposit said money in said bank. Yet, the court held in that case that all interest paid by the bank on *520 money so deposited with it by such treasurer belongs to the village, and not to the treasurer.
The action in said case of Glenville v. Englehart was one upon the official bond of said treasurer. The bondsmen were parties defendant to the action. The questions by demurrer appear to have been raised by the treasurer. But the court there 'held that the relationship of the treasurer to the municipality is such that an increase of the fund entrusted to his care, in whatever manner caused by him, goes with the fund and belongs to the owner, the village.
The Ohio cases, in my opinion, settle the question, that interest derived from public moneys, which public moneys were lawfully in the custody of the treasurer, although such treasurer deposited or loaned such public moneys, and derived such interest thereby, without authority of law for so doing—that the interest thereby derived belongs to the state or municipality of which he is the treasurer, and does not belong to the treasurer; that whether he is to be regarded as a bailee, or a special trustee, is not material, for, in either view, he is the custodian of the funds which belong to another; and that, in the absence of a statute or stipulation to the contrary, the increment follows the principal.
In other words, the increment—the increase by way of interest —on the funds so deposited become a part of the principal fund.
In the Griffith case, supra, there was no principal fund which the clerk in that case had any authority to collect or disburse. The entire fund involved in that ease was one which said clerk had absolutely no control or jurisdiction over in any manner. Hence, his sureties could not be called upon to respond for the conversion of that money by said clerk.
In the cases at bar, the moneys loaned or deposited by the treasurers are moneys which said treasurers were by law authorized to receive, hold and disburse. No other officer of state had authority to control and disburse said moneys. If, as a proposition of law, as held in said Esehelby case, supra, and in said Glenville ease, supra, the increment, or interest, follows and belongs to the principal fund, then such interest belongs to and becomes a part of and increases said principal fund. The interest is merged into the principal and the treasurer is the lawful *521 custodian of the entire fund so merged, and to unlawfully appropriate such interest is an appropriation of a portion of the principal itself. And, as held in said Esehelby case, “the safety of public'funds has been the chief object of care. For their security the law employs the character and ability of the treasurer, and the security which is afforded by his official bond.” Such interest would be an increment, and a part of said principal fund, whether it was in fact in the vaults of the treasury, or when earned and paid, the state was entitled to maintain an action to recover it.
It can not, I think, be successfully claimed that any increase or enlargement of the principal fund sp belonging to the state, although in the way of interest from such deposits, could be considered as a fund separate from the principal fund, the latter secured by the bond of the sureties, and the other part, such interest, unsecured by said bond. When such interest is earned and paid to the treasurer, it becomes the lawful money of the state, and properly belongs in the vaults of the treasury as a part oFthe principal fund. I think it could not successfully be contended if said treasurers had been paid said interest from such unlawful deposits or loans, and had placed said interest in the vaults of the treasury as earnings from the state funds, and then had afterwards misappropriated or converted an amount equal to such interest to their own use, that the bonds of the sureties would not be sufficient to cover such loss.
The fact that it was interest, if it had been covered into the treasury before it was so converted, would not purge it of the manner in which it was earned. It is, nevertheless, money earned from the unlawful loaning or depositing of public funds.
Whether the interest was misappropriated before, or after, it may have been placed in the vaults of the treasury, I think, is not material.- The fact remains that it is money that is exclusively owned by the state, and lawfully belongs in the state treasury, and is a part of the principal fund so used to earn such increment, and said treasurer is the lawful custodian thereof.
I am. aware that the question here presented is a difficult one, and it is one on which the minds and judgment of courts may differ. But from a careful consideration of the authorities, my *522 best judgment and conviction is that, if the facts stated in the petitions are established, liability attached to the sureties on said bonds for said increment. For this reason the several demurrers of said sureties in said four cases are, therefore, each and all overruled.