UNITED STATES *v.* ADAMS and others.

*(Circuit Court. D. Oregon.   July 27. 1885)*

1. LIABILITY OF A SURETY.
    The liability of a surety in an official bond is *stricti juris;* and he is not to be held responsible for the conduct of his principal beyond the scope of his under-taking, reasonably construed.

2. ASSISTANT SECRETARY OF THE TREASURY—AUTHORITY OF.
    The assistant secretary of the treasury is not the deputy of the secretary, but only his aid; and his acts are not valid unless specially authorized by law or pre-scribed by the secretary, (sections 161, 245, Rev. St.;) but a letter written by him to a collector of customs, concerning the deposit of money in his custody, will be presumed to have been written by authority of the secretary until the con-trary appears.

3. CASE IN JUDGMENT.
    In 1866 A. was collector of customs at Astoria, Oregon, when and where he received a letter, signed by the assistant secretary of the treasury, directing him to take $46,500 in gold coin, theretofore received by him in payment of duties, and then in his custody, to San Francisco, and deposit the same with the as-sistant treasurer; in pursuance of which direction the collector sailed for San Francisco on the current steamer with said money in his trunk, and on the way $20,500 of the same was stolen therefrom, without any want of ordinary care and diligence on his part, a portion of which was afterwards recovered, so as to reduce the loss to $12,696.28, for which the government sued the collector and his sureties on their bond.   The defendants pleaded these facts in defense and claimed they were not liable on the bond, to which the plaintiff demurred. *Held,* (1) that the carriage of this money to San Francisco was no part of the duty of A. as collector, (section 3639, Rev. St.,) and therefore his sureties are not responsible for his conduct while so engaged; and (2) that in the transporta-tion of said money, A. was simply acting as private carrier for the government, and is not liable on his bond for his conduct, or otherwise, except for the want of ordinary care and diligence.

Action on the Bond of Collector of Customs.
*James F. Watson,* for the United States.
*James K. Kelly,* for defendant Adams.
*George H. Williams,* for defendants Parker and Gillette.
DEADY, J.   This action is brought by the United States to recover of the defendants the sum of $12,696.28, with interest, at 6 per cen-tum per annum, from September 18, 1873.   The complaint alleges that in 1865 the defendant William L. Adams was appointed col-lector of customs for the district of Oregon, and that on September 15 of said year he, together with the defendants Charles L. Parker and Preston W. Gillette, as his sureties, executed their bond to the plaintiff in the penal sum of $50,000, conditioned as follows: "That the said Adams has truly and faithfully executed and discharged, and

shall continue truly and faithfully to execute and discharge, all the duties of said office according to law;" that said Adams failed to keep the condition of said bond, in this, that, of the moneys received by him as collector aforesaid, he failed and refused to pay over to the proper officers of the treasury department the sum of $12,696.28.

The answer of the defendants contains a specific denial of the material allegations of the complaint, except the execution of the bond, and two special pleas or defenses, as follows: (1) That on and prior to February 3, 1866, the defendant Adams, as collector of customs at the port of "Astoria," Oregon, had in his custody $46,500 in gold coin, and $1,000 in currency, belonging to the plaintiff; that a short time prior to said date said Adams had received instructions from the treasury department, through the assistant secretary thereof, "to deposit said moneys with the assistant treasurer of the United States at San Francisco," California, with advice that only the actual expenses incurred "in making the deposit and returning to Astoria would be allowed him;" that, in obedience to said instructions, said Adams, on February 3, 1866, sailed from Astoria, with said money, on the steam-ship Oregon for San Francisco, with the intention of personally depositing the same, as directed by the department; that said money was secured by said Adams on board the said vessel "in the best manner he was able to provide, and carefully watched and guarded by him, as much as he was able to do, during the voyage to San Francisco," but that about February 6th, while off the coast of California, $20,500 of said gold coin was stolen from the trunk in which it was deposited, by some of the servants employed on said vessel, "during the temporary and necessary absence of said Adams from his room in which said trunk was kept, and without any fault, negligence, or carelessness on his part;" that all of said money was afterwards recovered from the thieves and paid into the treasury of the United States, except the sum of $12,696.28, which is the money sought to be recovered by this action. (2) That said Adams, on February 3d aforesaid, had in his possession, as collector of customs aforesaid, the money of the United States aforesaid, at Astoria, when and where he received instructions from the proper officer of the treasury as aforesaid, to receive and carry said moneys, "as a special carrier," from the custom-house in Astoria, to the assistant treasurer in San Francisco, which he then and there undertook to do, as aforesaid; "that as such carrier said Adams used all proper precautions to safely keep the said moneys so intrusted to him," and that "the passage by steamer was the easiest and safest way of traveling with money from Astoria to San Francisco;" that on the passage $20,500 of said gold coin was stolen from said Adams, as aforesaid, "without any fault, negligence, or carelessness" on his part; that said Adams was not authorized to employ any person to assist him in transporting said money, and received no compensation therefor except "his necessary expenses from Astoria to San Francisco, and return to As-

toria;" and that, through the efforts of said Adams, all the money so stolen was recovered and paid to the proper officers of the United States, except the sum of $12,696.28, for which this action is brought.

To these two pleas the United States demurs, for that the facts stated therein do not constitute a defense to the action. The argument in support of these pleas is this: (1) The defendant Adams, in transporting this money to San Francisco, was not acting as collector of customs at Astoria, or in the district of Oregon, but as a special or private carrier, at the request of the treasury department, and that as said carrier or bailee, he was only bound to the exercise of ordinary care and diligence, and is therefore not responsible for a loss by larceny that occurred, notwithstanding the use of such care and diligence; and (2) although it should be held that Adams is liable for such loss, either as a common carrier or collector, still he was not then engaged in the performance of a duty within the obligation of his bond, or the purview of the statute regulating his duties thereunder, and therefore the sureties in such bond are not liable thereon for such loss.

The argument in support of the demurrer is—*First,* that the assistant secretary of the treasury had no authority to direct the defendant Adams to transport this money to San Francisco, and therefore, when he removed it from the custom-house and undertook to carry it to that place, he did so in his own wrong, and contrary to the condition of his bond; but if the assistant had such authority, then said Adams, in obeying his instruction was acting as collector, and in either case he and his sureties are liable on their bond for the loss accordingly, for the law is well settled that a larceny or robbery will not excuse the parties to a collector's bond for a failure to pay over all money that may have come into his hands as such collector; citing *U. S.* v. *Prescott,* 3 How. 578; *U. S.* v. *Morgan,* 11 How. 154; *U. S.* v. *Dashiel,* 4 Wall. 182; *Boyden* v. *U. S.* 13 Wall. 17.

By sections 1 and 2 of the act of September 2, 1789, (1 St. 65, §§ 233, 234, Rev. St.,) organizing the treasury department, the secretary of the treasury was authorized to appoint an assistant secretary; and by section 13 of the act of March 3, 1849, (9 St. 396; section 245, Rev. St.,) the provision for the appointment of such assistant was repealed, with a specification of certain powers and duties, and concluding as follows: "Who shall perform all such other duties in the office of the secretary of the treasury, now performed by some of his clerks, as may be devolved on him by the secretary of the treasury." By section 5 of the act of March 3, 1857, (11 St. 220,) the appointment of the assistant secretary was given to the president; and by section 3 of the act of March 14, 1864, (13 St. 26,) it was further provided that "an additional assistant secretary of the treasury" should be appointed by the president, "who shall perform all such duties in the office of the secretary of the treasury belonging to that department as shall be prescribed by the secretary of the treasury, or as may be required by law."

An "assistant" is one who stands by and helps or aids another. He is not a deputy, and cannot, therefore, act in the name of and for the person he assists, but only with him and under his direction, unless otherwise expressly provided by law. It is a question whether an assistant secretary, appointed under the act of 1849, could be even authorized by the secretary to do anything in his department, except such acts or duties as were performed at the passage of such act by some of the secretary's clerks. But no such restraint is imposed on the power of the secretary as to the assistant authorized by the act of 1864. Any duty pertaining to his office which the secretary may prescribe for him, such assistant may do; and it is highly probable that in practice the same rule was followed as to the first assistant. Besides, it is hardly to be doubted that in 1849 some clerk in the treasury department was performing the duty of directing collectors as to the disposition of public money in their hands.

But I think that an act done by the assistant, and within the authority and power of the department, must, until the contrary appears, be presumed to have been done under the direction of the secretary of the treasury. In *U. S.* v. *Tichenor,* 8 Sawy. 152, S. C. 12 Fed. Rep. 415, this court said that where the president was authorized to reserve land for certain military purposes, the action of the secretary of war, to whose department the subject belonged and the duty pertained, would be presumed, in the absence of evidence to the contrary, to have been authorized by the president. For the purpose, then, of this case, it must be presumed that the assistant secretary was acting in pursuance of the direction of the secretary when he required the defendant Adams to take this money to San Francisco, and deposit it with the assistant treasurer at that place.

By section 15 of the act of August 6, 1846, (9 St. 62, 63; section 3616, Rev. St.,) persons having public money of the United States, and not included in the directions contained in section 9 of said act, (section 3615, Rev. St.,) as was not the collector of the district of Oregon, might pay the same to the treasurer or assistant treasurer of the United States, or such other depositary, constituted in pursuance of the law, as the secretary of the treasury might designate; and by section 6 of said act (section 3639, Rev. St.) all public officers, including collectors of customs, "are required to keep safely, without loaning, using, depositing in banks, or exchanging for other funds than as allowed by this act, all the public money collected by them, or otherwise at any time placed in their possession and custody, till the same is ordered by the proper department or officer of the government to be transferred or paid out; and when such orders for transfer or payment are received, faithfully and promptly to make the same as directed, and to do and perform all other duties as fiscal agents of the government which may be imposed by this or any other act of congress, or by any regulation of the treasury department made in conformity to law."

Admitting that the order of the assistant secretary was given under the direction of the secretary, and also that the latter had the authority to direct or employ the defendant Adams to carry this money to San Francisco, the sureties maintain it was a duty or service for the discharge or conduct of which they were in no way bound. The undertaking of the defendant Adams, as collector, is stated in the condition of his bond as follows: "To truly and faithfully execute and discharge all the duties of his office according to law;" which duties were, according to section 6 of the act of 1846, *supra*, "to keep safely * * * all the public money collected by him" till the same was duly ordered "to be transferred or paid out;" and "faithfully and promptly" make such transfer or payment when required. There is no provision here looking to the collector being engaged in the transportation or carriage of public money from one state or district to another for a distance of six or seven hundred miles.

It may be and probably is the duty of a collector, under this section, to transfer the public money in his possession when so ordered, by depositing the same with a depositary in the town or place where his office is situated, or its immediate vicinity, and that his sureties are liable for any loss that may occur while he is so engaged, from either a larceny or robbery. To safely keep the public money under these circumstances may be a part of the collector's duty to faithfully "transfer" the same when required, and if so, the undertaking of the sureties makes them responsible for its faithful performance. But I doubt very much whether the duty of a collector "to transfer" public money in his possession, when required, includes the carrying or transportation of such money to any point beyond the vicinity of the custom-house, even in his own district, as from Astoria to Portland. The transfer and transportation of money from hand to hand and place to place are business transactions, and parties who undertake for a collector as sureties expect, and have a right to expect, that when the government engages in any such transaction with reference to the money in the possession of their principal, it will do so in a business way and according to business methods.

At the time of this transaction, as well as before and since, the usual method on this coast of transmitting any quantity of coin was by express; and that is the way this money should have been sent to San Francisco. Assuming that there was no designated depositary in Oregon at the time, the collector should have been instructed to transfer the amount to Wells, Fargo & Co., at Astoria, for transportation to San Francisco, who then would have been responsible for its safe delivery at the latter place. No business man in Portland would have thought of sending a clerk or messenger to San Francisco with $40,000 in coin, or the tenth part of it; and the assistant secretary who directed it to be done in this case, unless he did so on the advice of the collector, is the primary cause of this loss and morally responsible for it. The improvidence of this order appears to have soon

become known to the department, for it was stated and admitted on the argument of the demurrer that, within a day or two after the collector had left for San Francisco, a counter-command was received at this office, directing him to send the money by Wells, Fargo & Co.

The law is well established that the liability of a surety is *stricti juris*, and therefore he is not to be held responsible for the conduct of his principal beyond the scope of his undertaking, reasonably construed. But the rights and interests of the public, to whom the surety has voluntarily become bound for the conduct of his principal, are not to be overlooked in the consideration of the matter, and therefore courts ought not to be astute or alert, as they sometimes appear to have been, to raise doubts and start quibbles to save a surety from the otherwise legal consequence of his undertaking. Yet there is nothing in the nature or purpose of his undertaking that should make him liable beyond the fair and reasonable construction of its terms and the provisions of law relating thereto, considered in the light of the surrounding circumstances and with reference to the object of the transaction. *U. S.* v. *Cheeseman*, 3 Sawy. 429, and cases there cited. Nor do the words of the statute, (section 3639, Rev. St.,) to the effect that the collector shall "do and perform all other duties as fiscal agent of the government" prescribed by law, include the duty of acting as agent for the transportation of this money, without some law directly imposing such duty on him, or authorizing the secretary to do so in his discretion. This section, it must be noticed, includes assistant treasurers, receivers, and all other custodians of public money, and the provision in question must be construed in each case with reference to the nature of the office and the duties primarily and ordinarily pertaining thereto. An assistant treasurer might very properly be required to receive, keep, and pay out public money in any quantity and from any source, but not to act as a collector of revenue, either under the excise or tariff laws. Nor can a collector of customs be legally charged with the duty, and his sureties with the responsibility, of receiving, keeping, and paying out sums of money not collected by him as duties on imports. And even if this could be done, it would require a still more expanded construction of the provisions to require a collector to act as a carrier of public money, at the risk of his sureties.

In *U. S.* v. *Singer,* 15 Wall. 122, Mr. Justice FIELD says:

"The official bond of parties undoubtedly covers, not merely duties imposed by existing law, but duties belonging to and naturally connected with their office or business imposed by subsequent law. But the new duties should have some relation to or connection with such office or business, and not be disconnected from and foreign to both."

And in *U. S.* v. *Cheeseman, supra,* 431, Mr. Justice SAWYER, in considering the effect of this very provision, says:

"We think these words only intended to include such duties as naturally and ordinarily belong to the particular officer giving the bond, or have some

obvious relation to such duties, and such as the sureties, acquainted with the duties of the various public officers as usually devolved on them by law, might reasonably be expected to contemplate at the time of executing the bond as likely to be imposed upon their principal in case the exigencies of the government should require it, and not those duties which are usually imposed upon, and more appropriately belong to, an entirely different class of officers."

Neither is the defendant Adams liable on his bond as collector for this loss, if at all. In carrying this money to San Francisco he was acting, not as collector, but as a carrier for the department. In contemplation of law, Collector Adams delivered—transferred—this money to Carrier Adams, at Astoria, and thereafter his duty and responsibility concerning it, as collector, ceased, and that as carrier began. His liability as carrier does not arise on his bond as collector, nor is it measured by his duty as such. But his liability arises upon the obligation which the law imposes on him as a carrier. If he was a common carrier,—a person undertaking, for hire, to carry the treasure or goods of all persons indifferently,—he would be responsible for the loss, although it was the result of a larceny. A common carrier is an insurer of the safe delivery of the goods committed to his care, unless the loss is caused by the act of God or the public enemy. *Orange Bank* v. *Brown*, 3 Wend. 162; Lawson, Carr. §§ 1–3; Story, Cont. § 920; Story, Bailm. § 496.

But Adams was not engaged in the business of a common carrier, nor acting as such. He did not hold himself out as a person engaged in the business of carrying treasure, or anything else. He only undertook, at the request of the department, to carry this particular money, in consideration of receiving his actual expenses while so engaged, without any deduction of his salary during his absence from his office. He was therefore a private carrier, and responsible only as an ordinary bailee for hire, namely, for ordinary care and diligence, which, in this case, is alleged to have been duly bestowed on the undertaking. Story, Cont. 920; Story, Bailm. § 457; *Allen* v. *Sackrider*, 37 N. Y. 341.

Upon the facts stated in these two defenses, neither the principal nor his sureties in this bond are liable for this loss, and the demurrer thereto must be overruled.