*C. S. Carlsmith* for plaintiff.

*J. W. Russell* (*R. W. Breckons* with him on the brief) for defendant.

---

# THE COUNTY OF HAWAII *v.* WILLIAM PURDY AND THE UNITED STATES FIDELITY & GUARANTY COMPANY OF BALTIMORE, MARYLAND.

EXCEPTIONS FROM CIRCUIT COURT, FOURTH CIRCUIT.

ARGUED SEPTEMBER 21,
            AND OCTOBER 19, 1914.     DECIDED NOVEMBER 2, 1914.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

COUNTIES—*board of supervisors—committee.*

The power of a county to do ordinary business, and to buy and sell property, is vested in its board of supervisors which may, through one of its members, acting as a committee, sell property, and supervise road work in a given district.

SAME—*presumption from an agreed custom.*

It having been stipulated by the parties that P, a member of the board of supervisors for the district of H, sold certain crushed rock; supervised the road work in his district; made up false pay-rolls for road work; approved same and presented them to the board of supervisors which allowed same, after which he received and cashed warrants for the fraudulent claims, and converted money from such sales and fraudulent claims; and, that he acted under a custom existing in the county under which a

supervisor made such sales, supervised road work in his district and looked after the pay-rolls, the law presumes, in the absence of any showing to the contrary, that the board of supervisors had authorized him, as a committee of the board, to make such sales, and supervise such road work, and look after the pay-rolls therefor; and that he was acting in a matter in which he was authorized to act.

PRINCIPAL AND SURETY—*liability of surety—county supervisor.*

Where the bond of a county supervisor is conditioned that he will faithfully perform the duties of office prescribed by law, and pay over as directed by law all moneys received by virtue of his office, his surety is liable for money which he receives while acting in a matter in which he is authorized to act, if he wrongfully misapplies such money; as, in doing so, he is not faithfully performing his duty as a county supervisor, but guilty of official misconduct.

OFFICERS—*bond—surety.*

Where an officer acting in a matter in which he is authorized to act, is guilty of official misconduct, he is not faithfully performing his official duties, and he and his surety are liable for resultant damages on his official bond.

PLEADING—*defective, aided by stipulation of facts and judgment.*

A complaint was defective in that a material fact was not alleged; defendant answered; at the trial the material fact, with other facts, was stipulated, without objection; the plaintiff recovered judgment. Held, that the defect was cured by the stipulation and judgment.

OPINION OF THE COURT BY QUARLES, J.

The plaintiff commenced this action against the defendant Purdy as principal and The United States Fidelity & Guaranty Company of Baltimore, Maryland, as surety, upon two official bonds given under the provisions of Act 39, Session Laws 1905, known as the County Act. The bonds were executed in the form prescribed in section 25 of said act, one approved by the circuit judge of the fourth circuit on the second day of January, 1911, and the other approved January 6, 1913. In each the conditions are stated as follows: "Now Therefore, if the said bounden William N. Purdy shall faithfully perform all the duties of his said office as prescribed by law; shall safely keep all moneys which may come into his possession by virtue of his

said office; shall promptly pay over to the person or persons legally authorized to receive the same all such moneys in the manner prescribed by law; and shall deliver over to his successor in office all moneys held by him as such officer; then this obligation to be null and void; otherwise to remain in full force and effect." The defendant Purdy did not defend the action and does not join in prosecuting this appeal. The cause was submitted to the court without a jury upon the pleadings and an agreed statement of facts covering eight typewritten pages, which may be summarized as follows: The defendant Purdy was elected supervisor for the Hamakua district in the county of Hawaii in November 1910, and again in November 1912, and qualified under each election, executing, with the other defendant named, the two bonds sued upon in this action, the first of which was in force and effect from January 2, 1911, until the sixth of January, 1913, the latter from January 6, until August 6, 1913. In the year 1912, the defendant Purdy, claiming to represent the county of Hawaii, and "in accordance with a custom which had prevailed in the county of Hawaii of permitting members of the Board of Supervisors to enter into similar contracts," sold and delivered to the Paauhau Sugar Plantation Company certain rock which had been quarried and crushed by the county and with labor paid for by the county, receiving therefor sums aggregating $1625, which he retained and converted to his own use and failed to pay over to the county. That a custom had prevailed in the county, from its organization, under which supervisors from the several districts of the county assumed general control and supervision over the building, maintenance and repair of public roads, and the employment of labor therefor, in the district from which elected, and in accordance with said custom the defendant Purdy within the dates mentioned in the complaint did place upon the pay-rolls of said district the names of certain persons who did not work upon any road for the said county; that he signed the names of such persons to said pay-rolls, approved said pay-rolls

County of Hawaii v. Purdy, 22 Haw. 272.

which were approved by the board of supervisors of the county, procured warrants for the amounts shown on said pay-rolls, and endorsed and collected said warrants, all aggregating the sum of $1177.50, in all of which acts he claimed to represent the county, and the persons dealing with him so understood. That demand had been made of him for payment of all of said sums, and also of his said surety, but none of the same had been paid. Upon the pleadings and agreed facts the circuit court found in favor of the plaintiff, and rendered judgment as demanded for the sum of $2802.50, with interest and costs. The defendant surety company brings the case here upon exceptions which challenge the correctness of the findings and judgment of the trial court, principally upon the ground that the acts of the defendant Purdy, shown by the complaint and agreed facts, were done by color of office and not by virtue of office, and the judgment therefore is contrary to law and the evidence.

This case has been ably presented by the respective parties by written briefs and oral arguments. A large number of authorities have been cited on behalf of the respective parties, it being urged on behalf of the defendant surety company that the acts of the defendant Purdy complained of, were not done by virtue of office, but under color of office, and therefore, the same did not constitute breaches of the bonds sued on. The questions raised call for an inquiry into the powers and duties of county supervisors. The defendant contends that county supervisors can only act conjointly, or as a board; that an individual supervisor cannot sell county property, nor do any act that will bind the county, and therefore the acts of defendant Purdy in question do not constitute breaches of the conditions of the said bonds for which the defendant surety is liable; that sureties are favored in the law, and the conditions of their undertaking strictly construed in their favor, their liabilities never being extended beyond the letter of their contracts. Many decisions have been cited in support of defendant's contentions. A careful consideration of the authorities shows that they are sus-

ceptible of classification.   In some of them the principal received money contrary to the directions of a positive statute, as where a statute required that before a license should issue the fee therefor should first be paid into the hands of another officer, and the principal defendant issued the license without the fee being so paid, received the fee himself and misappropriated it, the sureties being held not liable.   (*State* v. *Moore,* 56 Neb. 82, 76 N. W. 474; *Orton* v. *City of Lincoln,* 56 Ill. 79, 41 N. E. 159; *San Luis Obispo County* v. *Farnum,* 108 Cal. 562, 41 Pac. 445; *Lowe* v. *City of Guthrie,* 4 Okla. 287, 44 Pac., 198.)   Other cases hold that where an officer receives money to which the State or municipality is not entitled, misappropriates it, and his sureties are sued that they are not liable. (*State* v. *Porter,* 69 Neb. 203, 95 N. W. 769; *People* v. *Cobb,* 10 Col. App. 478, 51 Pac. 523.)   Sureties have been held not liable under the following circumstances:   An officer collected money which the law directed should be paid to another.   (*State* v. *Griffith,* 74 Ohio St. 80, 77 N. E. 686.)   A public official · committed a private trespass without warrant or authority. (*Drolesbaugh* v. *Hill,* 64 Ohio St. 257, 60 N. E. 202.)   The law required a sheriff to take a replevy bond from the plaintiff before delivering property to him, and he delivered it without the bond, took cash as security, squandered the money, and it was held that he did not act by virtue of his office.   (*People* v. *Hilton,* 36 Fed. 172.)   A collector of customs, acting outside of his duties, undertook to transport a large sum of money from his office to a city in another State, and part of the money was stolen.   (*United States* v. *Adams,* 24 Fed. 348.)   A clerk issued guardian letters before a bond was first given as required by statute, the letters being void.   (*Carpenter* v. *Sloane,* 20 Ohio . 327.)   A bond was conditioned that all public moneys that should come into the hands of an officer, should be faithfully accounted for, and he received money from the sale of private Indian lands and kept a small portion of the money for compensation.   (*United States* v. *Rogers,* 81 Fed. 941.)   The bond of

County of Hawaii v. Purdy, 22 Haw. 272.

a constable stipulated that he would "faithfully perform all of the duties of a constable in the service of all civil process which may be committed to him," and the alleged breach was that he had, after service of process, received from the defendant the money sued for and failed to pay it over. (*City of Boston* v. *Moore,* 3 Allen 126.) A marshal, without authority of law, named one to act as a special deputy at an election to perform the public duty of preserving the peace, and the one so named had committed a trespass; the sureties of the marshal held not liable. (*Hawkins* v. *Thomas,* 3 Ind. App. 399, 29 N. E. 157.) A town trustee procured the allowance of his claim for services by the board, took a certificate therefor which he sold to the plaintiff, after which he procured a duplicate and settled with the board of trustees. (*State* v. *Keifer,* 120 Ind. 113.) A clerk made a certificate that the board of county commissioners had allowed a claim in his favor and assigned it to the plaintiff, then collected the claim; there was no law requiring or authorizing such certificate. (*Ottenstein* v. *Alpaugh,* 9 Neb. 237, 2 N. W. 219.) The bond of a city assessor was conditioned that he would perform his duties according to laws, ordinances and regulations "passed and approved by the mayor and common council;" he collected real estate taxes without any law, ordinance or regulation authorizing him to do so. (*City of San Jose* v. *Welch,* 65 Cal. 358, 4 Pac. 207.) The bond of a justice of the peace was conditioned that he would pay to the parties entitled thereto all such sums of money as should come to his hands by virtue of his office; he received money on void judgments. (*Barnes* v. *Whitaker,* 45 Wis. 204.) A county attorney collected money due upon seed notes to the State without authority. (*Wilson* v. *State,* 67 Kan. 44, 72 Pac. 517.) A careful study of these authorities shows that the official had, in each case, assumed to do something contrary to a positive law, or something without authority, acting outside of the line of his duty. The particular acts charged in each of those cases were

held not to constitute breaches of the undertaking of the official, hence the sureties were correctly held to be not liable.

The important questions in the case at bar are:

Was the defendant Purdy acting by virtue of his office, and, by his conduct, and acts, shown in the complaint and agreed facts, faithfully performing, or failing to faithfully perform, his duties as a supervisor? To determine these questions we must look to the statutes prescribing the powers and duties of county supervisors, found in Act 39, Session Laws 1905. Chapter 4 of that act provides, *inter alia:* "Each County shall have the following powers * * *: To purchase and otherwise acquire, take on lease and hold real and personal property within its defined boundaries and to manage and dispose of the same as the interests of the inhabitants thereof may rquire; * * * to make contracts and do all things necessary and proper to carry into execution the foregoing powers and all other powers vested in said County or in any officer thereof." In chapter 14 of said Act it is provided: "The Board of Supervisors of each County shall have general supervision and control of all the public affairs of their respective Counties and the supervision of all subordinate officers, and, without prejudice to the generality of the foregoing powers, shall have the following specific powers: * * * To authorize and supervise the expenditure of all funds belonging to the County; * * * A majority of the members of the Board of Supervisors shall constitute a quorum for the transaction of business, but in order to pass any ordinance or to order the disposal of any property of the County, * * * it shall be necessary that such ordinance or order shall receive the approval of a majority of the members of the Board." It is seen that the general powers of the supervisors are exceedingly broad and the duties devolving upon them are numerous, embracing the conduct, control and supervision of all of the business affairs of the county, as well as the supervision of all subordinate officers, while the special power and duty of supervising all expenditures of the county is placed upon them.

County of Hawaii v. Purdy, 22 Haw. 272.

These statutory provisions are to be regarded as entering into the obligations of the official bonds in question, as parts of the contracts between the plaintiff and the defendants found in the bonds sued on. In the case of *Lowe* v. *Guthrie,* supra, cited and relied on by the defendant surety company, it is held that sureties on an official bond contract with reference to the law requiring such bond and regulating the duties of the officer, and that such laws enter into and become a part of the contract as much as if incorporated into the bond itself. In the same case the court, in stating the rule and exception thereto, differentiates between acts done by virtue of office and under color of office, saying: "When the principal exceeds his lawful authority and performs wholly unwarranted acts, unless such acts are done in an attempt to exercise his lawful authority, such acts are done *colore officii* and not *virtute officii,* and the principal alone is liable." It is stipulated that the defendant Purdy, in selling the crushed rock, in supervising the employment of labor, and in the preparation and approval of the pay-rolls for his district, was acting under a custom that prevailed in his county. Without any further showing, and nothing appearing to the contrary in the record, the presumption is that the board of supervisors and a majority of the members thereof, authorized him, as a member of the board, to do those things. Boards of Supervisors must of necessity appoint committees consisting of one or more from their body to look after matters of the county distant from the county seat where the board meets as a body. They may designate a third person as agent to perform an administrative act. The stipulated fact that in performing the acts alleged in the complaint the defendant Purdy was acting under a prevailing custom in his county, is sufficient, in the absence of a contrary showing, to authorize the presumption that the sale of the rock and his actions with reference to the pay-rolls were sanctioned by the board of supervisors, and that his acts were in the line of official duty. In *United States* v. *Adams,* supra, cited by the defendant, speaking of a similar

situation, the court said: "But I think that an act done by the assistant, and within the authority and power of the department, must, until the contrary appears, be presumed to have been done under the direction of the Secretary of the Treasury." A faithful performance of his duty as a supervisor required that the defendant Purdy should see that the purchaser turned the money paid for the crushed rock into the county treasury or do so himself. Supervisors are provided for the purpose of conducting the business of the county and safeguarding its interests, not for the purpose of exploiting or looting the funds and property of the county. Each supervisor is an integral part of the board, a member thereof, and when he, acting for the board, makes a sale of county property and collects the purchase price, it is his duty to pay the same into the county treasury; and, if he does not do so, he is not faithfully performing his duties, as he and his surety have undertaken that he shall do, and a breach of the bond arises, and the obligation of the surety is found within the letter of the bond. The case at bar is similar in principle to that of the *City of Greenville* v. *Anderson,* 58 Ohio St. 463, where the condition of the bond was that the officer (city clerk) "shall faithfully perform the duties of his office," and among other duties enjoined upon him by law were those of examining claims allowed, notifying the officials charged with the duty of passing on claims when there was no fund out of which a given claim could be paid, and of drawing warrants for lawful claims. He violated these duties, drew warrants for claims not allowed, in other cases drew warrants for larger amounts than allowed and misapplied the overplus, and in other cases drew warrants for legal claims that had been allowed and fraudulently cashed the warrants, and he and his sureties were held liable on his bond. The court in that case, at pages 476, 477, said: "It will thus be seen that the law designed to make the office of city clerk a substantial safeguard against encroachments on the treasury of the city, and any misappropriation of the public moneys. No claim can

County of Hawaii v. Purdy, 22 Haw. 272.

properly reach the treasury for payment except through the
city clerk, and with his official sanction; and he is charged
with the important duty of protecting the city from the pay-
ment, out of its public funds, of any but just and valid claims
for whose payment the council has made the necessary appro-
priation and allowance. It is a palpable violation of his official
trust to aid in the procurement of those funds in any other way,
or for any other use. His sureties stand for his official integrity
in this respect, and are liable for losses resulting from his offi-
cial dishonesty. When, therefore, the defendant Elliott drew
fraudulent warrants on the plaintiff's treasury for amounts
greater than were due to the creditors in whose favor they were
drawn, and greater than had been authorized by the council,
obtained from the treasury the whole amount represented by
the warrants, and appropriated the excess to his own use, he
grossly misused his official position to perpetrate frauds on the
city, whose loss so occasioned is within the obligation of his
bond. It was manifest unfaithfulness to official duty, against
the consequences of which the sureties undertook to indemnify
the plaintiff. So, also were the fraudulent alterations of the
claim ordinances passed by the council, thus falsifying the rec-
ords which it was his duty to carefully and accurately keep and
preserve, by inserting unauthorized claims, and thereafter
drawing warrants therefor on the treasury, receiving the money
on them, and converting it to his own use." The case at bar is
unlike the case of *Superintendent of Public Works* v. *Richard-
son,* 18 Haw. 523, where a clerk, without any statutory or other
authority, collected money due the government and squandered
it, the court holding that he acted by color of office and not by
virtue of office, and that there was no breach of his bond for
which his sureties were liable. It was a duty resting upon the
defendant Purdy, and each of his co-members of the board, to
see that the money realized from the sale of the crushed rock
was covered into the treasury, and this duty rested upon each
of them by virtue of office. It was also a duty resting upon the

defendant Purdy, by virtue of his office, when he undertook to supervise and approve the pay-rolls of persons in the employ of his county on road work in his district to see that names only of persons who actually worked were on those pay-rolls, and when he.fraudulently placed names upon them of persons who did not work, approved the pay-rolls, and assisted in having the board of supervisors approve them, afterwards cashing warrants for such fraudulent claims, he was not safeguarding the property and interests of the county, and was not faithfully performing duties imposed upon him by law as a supervisor as the defendant surety had undertaken that he would do, and for the resultant injury to the county by reason of such acts, the defendant surety is liable under the terms of the bonds sued on.

County supervisors act in legislative and administrative capacities. In the enactment of ordinances they are exercising judgment, but in doing the acts complained of in this case, it is not a question of judgment, or of error of judgment, but failure to· perform positive duties enjoined by law. The ultimate facts shown by the complaint and agreed statement of facts are sufficient to establish the failure of the defendant Purdy to perform positive duties resting upon him by virtue of his office. It neither requires logic nor extended argument to show that where an officer is acting in his official capacity and fails to perform a duty resting upon him, that he is not faithfully performing his duty.

That the board had determined to sell crushed rock in the Hamakua district, and authorized defendant Purdy as a committee of one to do so, is a reasonable inference from the stipulated facts. Power to sell carried with it power to receive the purchase money. The statutes containing no provision forbidding the purchaser to pay it to the board, or to a committee of the board, such collection was within the line of the duty of defendant Purdy. Having received the purchase money, it was his duty, by virtue of his office, to pay it into the county treasury. He was acting ministerially in making the sale and re-

ceiving the purchase price, under general authority from the board; the board was acting by and through him. The question here is not the validity of the sale, but the liability of the sureties for the money received. The mere absence from the stipulation of the fact showing that an order of the board authorizing the sale had been made and recorded, is not sufficient to justify the conclusion that no such order was made. If such an order had been made, and this is indicated by the stipulation as to the custom, the sale was valid; if no such order had been made, the sale as between the county and the purchaser would not be good unless ratified. There is no showing, and no claim made, that the county did not regard the sale as valid, or that it sought to avoid it. On the other hand, the action of the county in suing for the purchase price might be regarded as a ratification. "A municipal corporation *may ratify* the unauthorized acts and contracts of its agents or officers, which are *within the scope of the corporate powers, but not otherwise.* Ratification may frequently be inferred from acquiescence after knowledge of all the material facts, or from acts inconsistent with any other supposition. The same principle is applicable to corporations as to individuals." (Dillon on Municipal Corp. 5 ed. sec. 797.) That in conducting the ordinary business of buying and selling personal property, which are ministerial acts, the board may act by its committee or by an agent, see the following authorities: *Holland* v. *State,* 23 Fla. 123, 1 So. 521; *Platter* v. *Elkhart County,* 103 Ind. 360, 2 N. E. 544; *Miller* v. *Dearborn County,* 66 Ind. 162; *Call* v. *Hamilton County,* 62 Ia. 448, 17 N. W. 667; *Wilhelm* v. *Cedar County,* 50 Ia. 254; *Cushman* v. *Carver County,* 19 Minn. 252; *Hannibal etc. R. Co.* v. *Marion County,* 36 Mo. 295; *Robert* v. *Kings County,* 38 N. Y. Supp. 521; *People* v. *Rensselaer County,* 5 N. Y. Supp. 600; *Duluth etc. R. Co.* v. *Douglas County,* 103 Wis. 75, 79 N. W. 34; *Cass County* v. *Gibson,* 107 Fed. 363; *Power* v. *May,* 114 Cal. 207; *Lassen County* v. *Shinn,* 88 Cal. 510; *Plummer* v. *Kennedy,* 72 Mich. 295; *Kramrath* v. *City of*

*Albany,* 127 N. Y. 575; *Mayor of Baltimore* v. *Musgrave,* 48 Md. 272; *Hitchcock* v. *City of Galveston,* 96 U. S. 341; Dillon on Municipal Corp. 5 ed. sec. 775. "Boards of county commissioners, or, as they are called in some states, supervisors, are officers of a county charged with a variety of administrative and executive duties, but principally with the management of the financial affairs of the county, its police regulations, and its corporate business. Such boards have a perpetual existence, continued by members who succeed each other, and the body remains the same, notwithstanding a change in the individuals who compose it. A county board is usually considered to be a quasi-corporation. Its official duties and powers partake more of the characteristics of corporate acts and powers than those of mere trustees, and as a quasi-corporation it is governed by the fundamental rules which the common law has provided for the better government of corporate bodies, and for the proper exercise of the corporate functions." (11 Cyc. pp 380, 381.) It makes no difference whether it be held that in receiving the purchase price, and in padding the pay-rolls of road employes in his district, the defendant Purdy was acting by virtue of office, or by color of office, inasmuch as his failure to safeguard the interests of the county was a breach of the condition in his bond to faithfully perform his duties. This has been determined by the weight of authority, and especially by the supreme court of the United States, whose decisions are binding upon this court, in the case of *Lammon* v. *Feusier,* 111 U. S. 17, where the authorities are reviewed, and a marshal, who, under an execution directing him to seize the property of the execution debtor, seized the property of a stranger, and the court held that he acted officially, broke the condition of his bond that he would faithfully perform the duties of his office, and his sureties were held liable. See also *Lee* v. *Charmley,* 33 L. R. A. (N. S.) 275 and authorities cited in opinion and notes.

The case at bar is distinguishable from that of *People* v. *Pennock,* 60 N. Y. 421. In that case it was held that the stipu-

lation of the sureties that the principal should account for and pay over all moneys that should come to his hands as supervisor, meant such as should come to his hands pursuant to law, and not such as the law required should be paid to another official. There the officer had no authority to receive the money. Here, as we have endeavored to show, defendant Purdy was acting within the line of his duty, under authority from the board, in a matter over which the law gave the board power to act; hence, this case is unlike the case of *People* v. *Pennock*. In the case of *National Bank of Redemption* v. *Rutledge,* 84 Fed. 400, an auditor charged with the duty of signing, sealing and issuing bonds that had been authorized by the county, fraudulently duplicated ditch bonds to the extent of $10,000 which he negotiated, having no authority to issue the duplicates. The court held the sureties liable on the ground that in issuing bonds he was performing a duty devolved upon him by law; he was acting officially, and his wrongful act was a violation of his undertaking to faithfully perform the duties of his office. At page 7 of the additional brief filed by appellant, it is said: "Undoubtedly the Board of Supervisors could lawfully have empowered Purdy to perform any of the acts.described in the plaintiff's declaration." Appellant then argues that the board did not grant such authority, and that if it had, Purdy would not have acted in the capacity of supervisor, but as the agent of the board. We agree with the statement that the board could have lawfully authorized Purdy to act in those matters, they being within the scope of the powers of the board. We have heretofore referred to the stipulation as to the custom under which Purdy acted, and the presumption growing out of same that he acted with the consent of the board and under its direction, and as a committee of the board performed ministerial acts, and was acting officially. "In passing judicially upon the records of county boards where authority appears or is implied by law, such records will be construed according to their intent and it will be assumed that the proceedings were rightfully had in

the absence of all suggestion in the record to the contrary.    It will be presumed that the members of such board as public officers have done their duty; that their meeting was properly convened and at the time designated by law; that they acted in accordance with rules adopted for the transaction of their business; and that a quorum of the board was present." (11 Cyc. 400, citing many authorities in notes.)   As shown by the supreme court of the United States in the case of *Lammon* v. *Feusier,* supra, the decided weight of authority holds sureties on an official bond liable for wrongful acts committed by color of office, and all of the authorities hold them liable for wrongful acts committed by virtue of office.    It therefore makes no difference whether the acts of defendant Purdy complained of were committed by virtue of office, or by color of office.    They were acts of official misconduct, and constituted breaches of the first condition of the bonds sued on.    It is palpable from the stipulated facts in this case that defendant Purdy performed the acts complained of by reason of being a supervisor and was enabled to perform them by reason of his official capacity, and in performing them claimed to act as a supervisor, and the parties dealing with him, dealt with him as such.

It is contended on behalf of the appellant that the judgment is not supported by the pleadings and the evidence.    The theory upon which the declaration seems to have been drafted is that the money received by defendant Purdy was received by virtue of his office, although the acts charged are alleged to have been done by "virtue and color of his office" of supervisor, while acting and claiming to act as supervisor.    If the declaration be defective, which it is not necessary to decide, the defects were cured by the appellant by stipulating the facts, and trying the case without objection to the sufficiency of the complaint, and by the judgment.    The complaint did not allege the custom under which each supervisor acted in the matter of selling crushed rock and looking after the pay-rolls in the district from which he was elected.    It is too late now to raise that question.

County of Hawaii v. Purdy, 22 Haw. 272.

"If evidence is admitted without objection to prove a fact imperfectly pleaded, the defect will be deemed waived, but no such result follows where the evidence is objected to when offered. In some cases this rule is held to apply only to the introduction of evidence to prove facts defectively alleged, but not wholly wanting, while other cases allow the proof of material facts which are entirely omitted from the pleading, to cure such omission, at least where the facts omitted go to the amount of the recovery merely and not to the right to recover, as where an allegation of earning capacity was omitted." (31 Cyc. 723.) In the case of *Nanie* v. *Namea,* 3 Haw. 628, the declaration was insufficient in that it did not allege title in the plaintiffs, but same could be implied from averments made; the court held the declaration to have been aided by the verdict and denied the motion in arrest of judgment.

It is contended on behalf of the county, appellee, that the defendant being a surety company must be regarded as an insurer, the contract strictly construed against it, and many authorities are cited to that effect. Suffice it to say that it does not appear in the record that the appellant, as surety, was paid any fee or fees for executing the said bonds, hence, it is unnecessary to pass upon the question.

The exceptions are overruled with costs to the appellee.

*L. P. Scott, Deputy Attorney General* (*I. M. Stainback, Attorney General,* with him on the brief) for plaintiff.

*C. S. Carlsmith* for defendant U. S. Fidelity & Guaranty Co.